300 So.2d 794 (1974)
Walter EDWARDS, Jr.
v.
MID-STATE PAVING COMPANY and United States Fidelity & Guaranty Company.
No. 47683.
Supreme Court of Mississippi.
September 16, 1974.
Rehearing Denied October 14, 1974.
Barrett, Barrett & Barrett, Lexington, for appellant.
Liston & Upshaw, James Y. Dale, Greenwood, for appellee.
RODGERS, Presiding Justice.
This is a workmen's compensation case in which the Attorney/Referee, the Workmen's Compensation Commission [by a divided vote] and the Circuit Court of Holmes County, Mississippi, on appeal denied the claim of Walter Edwards, Jr. for *795 compensation growing out of an injury alleged to have occurred while the claimant was performing labor for the Mid-State Paving Company. The record reveals the following facts.
Walter Edwards, Jr., a Negro male sixty-five (65) years of age, had been employed by Mid-State Paving Company since April, 1971, as an unskilled laborer. He testified that sometime during the first half of August, 1971, he and others were ordered to dig a drainage ditch under some machinery. The place where the ditch was required was muddy. The other men refused to go into the mud, but since he had on boots, he climbed under the machine and dug out the ditch. In digging the ditch it was necessary to use a mall to strike the pick to get it loose under a sill; and, in doing so, he struck his knee with the mall. He continued to work until finishing the job, and that night at home he discovered that he had cut the skin on his knee and a little blood had come out. A knot was on his knee and it was stiff. He put "coal oil" on his leg and went back to work. He testified that he did not tell anyone about his injury because he was afraid he would get fired. He said "I just thought it be two, three days, I'd be through with and be back to work." He said he worked for more than a week after his injury "hopping on that leg," but his leg grew worse, so that he went to see Dr. Brumby in Lexington, Mississippi. The doctor drew blood and fluid from under the knee cap on two occasions. The claimant's leg and knee grew worse. He went to the University Hospital and after several trips he was admitted for surgery. His leg was opened so that the infection under the knee cap could be treated. His leg was put into a cast. Later the cast was removed, and claimant was permitted to move about on crutches. He then went to see his foreman, Mr. Travis Johnson, to see if "he would do something for me on my leg." He testified that Mr. Johnson told him he would do something for him and asked him to come back Friday. He testified that he made several trips. He said that Mr. Johnson finally told him he had heard that Edwards had entered a "case" against them, and thus Johnson would not let him have any money. He said he told Mr. Johnson, "I broke my leg up under that belt there digging that trench."
He testified that two years before the accident he had fluid, "blue blood," drawn from this same knee, but that he had not had any trouble with his knee until he struck it with the mall in August.
Dr. Van Temple, the physician who treated the claimant in the hospital, testified that Edwards had an infection under the knee cap caused by a blow of some kind, and the infection was derived from some breaking of the skin. The doctor treated the knee by drawing blood from under the knee cap and giving the patient antibiotics. Later [September 23, 1973] Dr. Temple and Dr. Ben Buchanan operated on claimant by removing the infected lining under the knee cap. Dr. Temple testified that the claimant told him that he hurt his knee crawling around on the ground; that "it was related to doing something having to be drawn on his hands and knees on the job, something; yes." The doctor also testified that the claimant told him he had injured his knee two years before, but he said he "didn't feel like it really had anything to do with this now." After discussing the probable effect the injury would have on the claimant's knee, the doctor testified that it would be some time [probably five years] before it would be known to what extent his leg was injured but he said that at the time of the hearing Edwards had not reached maximum medical recovery.
Mr. Travis Johnson, the Superintendent of Mid-State Paving Company, was introduced as a witness for the employer. He testified that the claimant was working for the Mid-State Paving Company until August 18, and that the claimant did not notify him that he was injured on the job on *796 August 3. He admitted that the claimant came to see him on three or four occasions wanting to borrow some money and that Johnson told him he would see him later. He finally discovered that the claimant had filed a claim for workmen's compensation and, thus, did not let claimant have any money. He denied that Edwards told him he was hurt on the job. He admitted that claimant was using a walking stick and was limping at the time he came to see him. Mr. Johnson also said: "We would lay Walter [Edwards] off when we wasn't really needing somebody, because we had men working better than Walter... . Walter knows this... . [b]ecause he came to me one time and asked me why I laid him off."
The appellee contends that the Commission was correct in affirming the order of the Attorney/Referee in which he held: "That the claimant failed to prove by substantial evidence that he suffered an accidental injury that arose out of and in the course and scope of his employment with Mid-State Paving Company."
At the outset, we are confronted with another of those cases where the Attorney/Referee refused to make a finding of fact. This custom is particularly glaring in this case, because if the Attorney/Referee had made a finding of fact he would have discovered that there was ample testimony on which to base an award of compensation to this injured employee. As a matter of fact, there is not a scintilla of evidence to contradict the evidence offered by this claimant as to his injury.
We have often pointed out that the undisputed testimony of witnesses sworn to and not so unreasonable as to be unbelievable and adverse to actual physical facts must be taken by the trier of fact as true. Hearin-Miller Transporters, Inc. v. Currie, 248 So.2d 451 (Miss. 1971); Fisher v. Daniels, 252 Miss. 662, 173 So.2d 908 (1965); Tombigbee Elec. Power Ass'n v. Gandy, 216 Miss. 444, 62 So.2d 567 (1953); Ryals v. Douglas, 205 Miss. 695, 39 So.2d 311 (1949); Crichton v. Halliburton & Moore, 154 Miss. 265, 122 So. 200 (1929); Stewart v. Coleman & Co., 120 Miss. 28, 81 So. 653 (1919).
This rule has been made applicable to workmen's compensation cases in Shivers v. Biloxi-Gulfport Daily Herald, 236 Miss. 303, 110 So.2d 359 (1959). In that case we had this to say: "Moreover, evidence which is uncontradicted or undisputed should ordinarily be taken as true by the trier of facts, if it is not inherently improbable or unreasonable. It cannot be arbitrarily disregarded. [Citing cases]." 236 Miss. at 308-309, 110 So.2d at 361.
In this case we have a common laborer who is obviously very ignorant and who was afraid of being "laid off." He continued to work "hopping around" on his sore leg because he thought his leg would only be sore for a few days, and because he "had to make it somehow." When the pain became severe he went to see a doctor who treated him. He then went to the hospital and underwent surgery. He told the doctor he got hurt on the job and after his operation he went to see the superintendent of the Mid-State Paving Company. He asked the superintendent "to help him on his leg." He was then in such a crippled condition that he used a walking stick. The superintendent had him come back several times. We find the testimony in this case to be more than sufficient to require an award of compensation.
We hold, therefore, that the judgment of the circuit court and the order of the Workmen's Compensation Commission must be reversed and the cause remanded to the Workmen's Compensation Commission for the purpose of determining the compensation due to be awarded the claimant [Mississippi Code Annotated § 71-3-17 (1972)], together with the interest and penalties required by Mississippi Code Annotated § 71-3-37 (1972). The Commission may consider whether or not the employee *797 is entitled to medical services. Mississippi Code Annotated § 71-3-15 (1972).
The motion of attorneys for the claimant requesting this Court to allow thirty-three and one-third percent (33 1/3%) of the sum due to the claimant as attorneys' fees is sustained. The Workmen's Compensation Commission will allow claimant's attorneys one-third (1/3) of such sums as the Commission determines to be due Walter Edwards, Jr. [Mississippi Code Annotated § 71-3-63 (1972)] in accordance with the foregoing opinion.
Reversed and remanded to the Workmen's Compensation Commission.
SMITH, ROBERTSON, WALKER and BROOM, JJ., concur.