HARDIN'S BAKERIES, et al. *v.* RANAGER.

May 11, 1953

No. 38770. 31 Adv. S. 1. 64 So. 2d 705.

464

*Lipscomb & Ray,* for appellants.

*Lester E. Wills,* for appellee.

HALL, J.

Appellee was employed for three years by Hardin's Bakeries, Inc. He was furnished and required to use a baker's pad or mitten, called Jomac, in handling the hot pans of bread as they came from the oven. While so engaged a rash appeared on his hands which grew worse and extended up onto his arms. Under treatment the rash disappeared and he resumed his work. It appeared again. According to the medical testimony his trouble was diagnosed as contact dermatitis and was caused by something coming in contact with his hands. A skin specialist suspected that appellee was allergic to something with which he had come in contact and tested the mitten on his arm with the result that it produced a definite redness. This specialist testified that this indicated that appellee was allergic to the material in the mitten or to some chemical in it.

The attorney-referee found that appellee's trouble was not due to an occupational disease but was an accidental injury within the meaning of our Workmen's Compensation Law, and he awarded compensation accordingly. His action was affirmed by the entire commission and,

on appeal, was also affirmed by the circuit court, and the bakery and its insurer appeal here.

It is here contended that appellee's trouble is an occupational disease and is not due to an accidental injury. Appellants say that an accidental injury is one that results suddenly from the application of some external force but cite no authority to sustain this contention. We shall deal with it first.

Section 2 (2) of our compensation law defines "injury" as an "accidental injury or accidental death arising out of and in the course of employment". Laws of 1948, Chap. 354, p. 508, Laws of 1950, Chap. 412, p. 491. Webster's New International Dictionary defines "accidental" as "happening by chance or unexpectedly; taking place not according to the usual course of things."

In 58 Am. Jur., Workmen's Compensation, Sec. 196, p. 705, it is said: "It has been, stated that the word 'accident' as used in the phrase 'injury arising by accident', and similar expressions, in compensation statutes, are to be interpreted in the popular and ordinary sense, and as having a wide signification. According to some authorities, it is to be construed liberally in favor of the workman. It is generally construed as meaning an occurrence which is neither expected, designed, nor intentionally caused, by the workman, and so, as to injuries unintentionally resulting from the acts of the latter, is employed in contradistinction to the expression 'wilful misconduct', which is found ordinarily in the same section or paragraph of the statute. It has been stated that an injury is unexpected, so as to bring it within the category of 'accident', in this connection, if the workman did not intend or expect that it would result on the particular occasion from what he was doing. The mere apprehension that an injury such as did occur was likely to occur at some indefinite time in the future does not deprive the occurrence of its accidental character. While the concept of accident is ordinarily understood as embodying a certain degree or element of suddenness in

the occurrence of the event, and is frequently so defined, it is not always required that the occurrence be instantaneous.''

In Scobey v. Southern Lumber Co., (Ark.) 238 S. W. 2d 640, the Supreme Court of Arkansas said: ''In the case of Murch-Jarvis Co. Inc., v. Townsend, 209 Ark. 956, 193 S. W. 2d 310, this Court said: 'Appellants insist, however, that appellee did not suffer an accidental injury because no definite date or occasion can be fixed as to when the aggravation happened. Schneider, in his Workmen's Compensation Text, Vol. 4, Perm. Ed., page 387, has this to say on the question: ''Diversity of opinion exists as to what constitutes the customarily required definite time and place of an accident. On this question the expressions of the courts vary from the statement that 'accidents do not happen all day' to decisions to the effect that it may require as much as six months for an accident to culminate in a disabling injury. A reasonably definite time is all that is required. A certain fixed and definite event or occurrence is required from which time can be calculated. 'No stated period can be given as sudden as applied to each case, each must naturally depend on its own circumstances'.'' ' ''

In this case the times when appellee became disabled are certain and definite. After his first disability responded to treatment he returned to work and later began using the mitten again and his trouble returned within a week and as a consequence he was forced to give up his work entirely. The contention that it must result suddenly is not supported by the weight of the authorities on the subject.

In Webb v. New Mexico Publishing Co., 47 N. Mex. 279, 141 P. 2d 333, 148 A. L. R., 1002, 1006-1007, the Supreme Court of that state said: ''It is said that appellee did not relate his injury to any specific time or event, a necessary fact to be found, it is asserted, to support the judgment. The New Mexico statutes not only do not define the word accident, but do not under-

take to limit its meaning to 'sudden' injuries as do those of a number of states, nor is its meaning limited to any time test. Our statute is substantially the same as that of North Carolina regarding which the supreme court of that state said in McNeely v. Carolina Asbestos Co., 206 N. C. 568, 174 S. E. 509, 512: 'An examination of the Workmen's Compensation Act of North Carolina discloses many uses of the expression "injured employee" without the qualifying words "accident" or "by accident". So that, unless we attempt to whittle down or enlarge words or undertake to put big threads through the eyes of little needles, it would seem manifest that our act did not undertake to limit compensation to cases where the injury was begun and completed within narrow limits of time, but that it used the expression "injury by accident" in its common-sense everyday conception as referring to an injury produced without the design or expectation of the workman.' . . . An injury may be gradual and progressive, and not immediately discoverable; yet certainly and definitely progress to discovery and then to a compensable injury. Such was the injury to appellee. The time did arrive when the appellee's injury totally disabled him so that he could not work, and at that time he became entitled to compensation for total disability."

Appellants' contention that the injury must result from the application of some external force is answered in the case of Andreason v. Industrial Commission (Utah) 100 P. 2d 202, wherein it is said: "We are of the opinion that under the section of our law quoted, an injury arising out of an accident is not limited in meaning to the result of the application of physical force to the body of the injured. (Citing many authorities). In the case of Arquin v. Industrial Commission, 349 Ill. 220, 181 N. E. 613, 614, spinal meningitis was held to be an accidental injury and hence compensable. The court said: '. . . The specific time when the meningitis germ

entered the body of the deceased is, of course, unascertainable, but, since he was in constant contact with this dread disease for six days until he himself was stricken, the evidence seems reasonably sufficient to support a finding that he died as a result of an accidental injury arising out of and in the course of his employment. . . .' The following is found in Hood v. Maryland Company, 206 Mass. 223, 92 N. E. 329, 330, 30 L. R. A., N. S., 1192, 138 Am. St. Rep. 379: '. . . It is plain that Barry suffered bodily injury in consequence of becoming infected with glanders; as much so as if he had a leg or an arm broken by a kick from a vicious horse. Indeed it is possible that the bodily injury caused by the glanders was greater and more lasting than that caused by a broken leg or arm would have been.' . . . In Casserly v. City of Oakland, 215 Cal. 600, 12 P. 2d 425, the court held that broncho-pneumonia contracted in the course of employment is an accidental injury: '. . . The word injury has reference not to some break in some part of the body or some wound thereon, or the like, but rather to consequences or disability that result therefrom. Courts are practically unanimous in holding that the words should be given a broad and liberal construction in order that the humane purpose of the enactment may be realized. Such legislation should be applied fairly and broadly, with a view to confer the benefits intended. . . . From the standpoint of pure reason, whether bodily injury which produces a weakening or disintegration of the physical system is caused by flying germs or by flying shrapnel or by a poisoned arrow or by the sting of an insect is only a matter of degree as to the size or quality of the missile or instrumentality inflicting the injury. Moore v. Fidelity & Cas. Co., 203 Cal. 465, 471, 265 P. 207, 209, 56 A. L. R. 860.' Webster defines 'accidental' as 'happening by chance, or unexpectedly', and 'accident' as an unexpected event. In Young v. Salt Lake City, (90 P. 2d 174) cited above, we distinguished

between an accidental injury and an occupational disease. Therein we referred to cases of diseases held accidental injuries which were not the result of an application of physical force to the body. Infection by germs may be an unexpected event, even though not preceded by physical force to the body. 'An accidental injury' might well be expressed as 'a disability happening by chance or unexpectedly'. It, however, must be connected with the employment. In other words, we do not wish to imply that, because one becomes ill while at work, the statute applies to him, even though it may be that he became ill unexpectedly. That alone is not sufficient to make this case one of accidental injury. There must be a causal connection between his employment, or his place of employment, and his illness—something which happened to him in the performance of his duties, or some contact he made at his place of employment while on duty there—which forms the connecting link between his employment and the contraction of the illness.''

From the foregoing authorities we conclude that under our compensation law it is not necessary that an accidental injury as therein defined must result suddenly nor is it necessary that it result from the application of external force.

Appellants have argued their case throughout upon the assumption that appellee's trouble is an occupational disease. We do not think that position is well taken. The attorney-referee found to the contrary and his finding was affirmed by the entire commission and by the circuit court. We think these findings are abundantly supported by the authorities.

In the case of Vogt v. Ford Motor Co., (Missouri), 138 S. W. 2d 684, it appeared that Vogt contracted bronchial asthma, while at work, from being exposed to a draft from a large fan which blew cold air, dust, chemicals, vapors and fumes of paint on him and which

he inhaled causing or aggravating a pre-existing weakness which resulted in the bronchial asthma. The court said: "The proof is that he never had bronchial asthma before; that he was allergic, that is, susceptible to contracting asthma from inhaling the very elements that his employment required him to inhale. . . . The proof does not bear any of the earmarks of an occupational disease; in this particular factory no one else was ever similarly affected; asthma is not a disease, which from the common experience of humanity, is known to result to others engaged in the same work; in other words, the disease is not a usual concomitant or result of the work he was doing. While the draft-driven dust and fumes affected this man's peculiar allergy or susceptibility, it would not similarly affect any other man, unless that man possessed the very same allergy as did Vogt. In no sense of the word could Vogt's condition be attributable to the occupation of his employment. Then remains the question, is it the result of an accident as he claims? His condition cannot be attributed to some cause disassociated with his employment, because even though allergic to contracting asthma, the sleeping allergy was never awakened until after he became so employed in January 1935. It cannot be attributed to the occupation because it is not a disease which men in that occupation are subject to contract; it is not a disease known to be incidental to that particular employment. Then it is the result of accident or else we have a situation under the Workmen's Compensation Act where an employee contracts a disease out of and in the course of his employment, and, yet, not compensable. Such was not the intention of the lawmakers. We are told that an accident is 'an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury.' Section 3305, R. S. 1929. It was most certainly unexpected and unforeseen. Vogt could not have expected and foreseen that instilled in his physical

makeup was a dormant allergy to the particular dust and fumes of his employment. We must always keep in mind that negligence has no place in the case, the happening may have been either with or without human fault. It follows that it came upon him unexpectedly and unforeseen; then, was it sudden and violent? Although the statutory definition of an accident terms it 'an event', we do not find that any court has ever construed the statute to mean a single occurrence; in other words, an accident may consist of an event, a single occurrence, or it may consist of an event, a series of occurrences resulting in an injury; and likewise it would be a narrow construction of the statute to say that 'sudden' means instantaneous. The course of occurrences in this case, that is the inhalation of the dust and fumes driven by a fan to the place where Vogt was at work, day after day, culminated on May 21, 1935, in causing him such paroxysms of coughing as to cause him to fall to the floor. The objective symptoms of injury were manifest.

"In Downey v. Kansas City Gas Company, 338 Mo. 803, 92 S. W. 2d 580, 587, the plaintiff over a course of several months was engaged in working on flues or chimneys, and would get soot and 'stuff' on his hands and arms, and when perspiring would thoughtlessly wipe the sweat from his face with his hand or sleeve, and thus get the substance with which his hand or sleeve was covered into his eyes. There was no particular date he could give when he got the 'stuff' in his eyes; it was 'just right along', and it finally developed acute conjunctivitis. There, as here, the contention was that his disease was occupational, and not accidental, and that it was not sudden and violent. The Supreme Court, after a review of many cases on the question, held that the plaintiff's disease was from an accident, and in the course of the opinion said: 'Did the event happen "suddenly" within the meaning of the statute? We think it did. It appears to us that the fundamentally

accidental nature of the injury is not altered by the fact that the infection, if it may be so called, was gradual throughout a period of four or five weeks, or that, instead of a single accidental injury, there was a series of accidental injuries culminating in the same consequential result.' ''

In Webb v. New Mexico Publishing Co., supra, the contention was made that the injury was not due to accident but was an occupational disease, and in answer thereto the court said: ''The facts on the question of whether there was an accident are these: It was necessary for appellee, in the course of his employment, to frequently wash his hands, for which purpose his employer furnished soap. The soap furnished was one to which he was unknowingly allergic, and its use caused a breaking out of large, painful eruptions on his hands, so that within approximately six months appellee had become completely disabled from performing any work. The injury from the use of the soap could not have been reasonably expected or foreseen, and his injury constituted an unlooked for mishap, which was neither expected nor designed.'' The court then enumerated three classes into which industrial injuries may be divided, the second of which is ''Those injuries in which there is no accident separate and distinct from the injury that caused it, such as strain which causes back injury, rupture, blood clots, hemorrhage; ordinarily the unintended result of an intentional act,'' and then said: ''The washing of appellee's hands was a necessary part of the labor for which he was employed. His injury, therefore, arose out of and was suffered in the course of his employment, and if accidental, it was compensable. It comes under our second classification; an injury that was the unintended result of an intentional act; received while 'performing his labor under the usual and ordinary conditions of his employment.' ''

Another case where a distinction was made between an occupational disease and an accidental injury is Vic-

tory Sparkler & Specialty Co. v. Francks, 147 Md. 368, 128 Atl. 635, 44 A. L. R. 363, from which we quote: "An occupation or industry disease is one which arises from causes incident to the profession or labor of the party's occupation or calling. It has its origin in the inherent nature or mode of work of the profession or industry, and it is the usual result or concomitant. If, therefore, a disease is not a customary or natural result of the profession or industry, per se, but is the consequence of some extrinsic condition or independent agency, the disease or injury cannot be imputed to the occupation or industry, and is in no accurate sense an occupation or industry disease. . . . It was by chance that employer did not use due care, and by chance that the vapor of phosphorus was where its noxious particles could be inhaled by the girl. It was by chance that the inspired air carried these particles into her system, sickening her, and causing a necrosis of the jaw after fortuitously finding a lesion. The injury thus inflicted upon her body was 'accidental' by every test of the word, and its accidental nature is not lost by calling the consequential results a disease."

In the case at bar the appellee had a physical abnormality or weakness, i. e., an allergy or susceptibility to injury from coming in contact with the material from which the mittens were made or with the chemical with which they were treated; this condition was dormant and unknown to him and was activated by his contact with the mittens. In the case of Ingalls Shipbuilding Corp. v. Byrd, 5 Adv. S. 13, 60 So. 2d 645, not yet reported in the State Reports, we had a similar situation before us. There the employee had a congenital malformation of blood vessels at the base of his spine which was wholly unknown to him and its dormant condition was activated and changed into a serious injury while he was undergoing the vibration incident to operating an automatic chisel. We held that an injury is compensable "where an employee has been injured while

in the usual course of his employment when it requires his exposure to the hazard of precipitating a dormant and potential risk of physical weakness into an injury which, but for the particular employment, would not have happened." As support for our conclusion we quoted with approval from Larson's Workmen's Compensation Law, Vol. 1, Sec. 12.20, p. 170 as follows: "Pre-existing disease or infirmity of the employee does not disqualify a claim under the 'arising out of employment' requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought." In the same section of Prof. Larson's work he mentions a wide variety of physical weaknesses whose aggravation by the employment have been held compensable, and, among these, at page 173 he mentions allergies, which fit exactly the case at bar.

We conclude, therefore, that the findings of the attorney-referee are fully supported by the facts of this case and by the Workmen's Compensation Law, and that the judgment appealed from should be affirmed.

Affirmed.

*McGehee, C. J.,* and *Lee, Holmes* and *Arrington, JJ.,* concur.

---

ON PETITION FOR ALLOWANCE ATTORNEY'S FEES

June 8, 1953          34 Adv. S. 88          65 So. 2d 461

Arrington, J.

There has been filed in this Court in this cause the petition of Lester E. Wills, duly sworn to and joined in by the appellee, asking the approval by this Court of an attorney's fee in the amount of $75.00 for legal services rendered the appellee by the said Lester E. Wills on this appeal. It is alleged in the petition that the amount of the fee has been fixed by agreement between the appellee

and the said Lester E. Wills and has been approved by the Workmen's Compensation Commission. We are of the opinion that the prayer of the petition should be and it is granted, and that the allowance to the said Lester E. Wills of the attorney's fee claimed in the sum of $75.00 for his services in representing the appellee on this appeal should be and it is approved, and that the same shall be a lien upon the compensation awarded, and that the payment thereof shall be governed by Chap. 354 of the Mississippi Laws of 1948, as amended by Chap. 412 of the Mississippi Laws of 1950, and more particularly Sec. 26 of Chap. 412 of the Mississippi Laws of 1950, subject to the authority of the Workmen's Compensation Commission to commute any part of the future compensation payments into a lump sum for the purpose of paying the attorney's fee. American Surety Co. of N. Y. v. Boykin, 212 Miss. 310, 54 So. 2d 398.

Petition granted.

*McGehee, C. J.,* and *Lee, Kyle,* and *Arrington, JJ.,* concur.