L. B. Priester & Son, et al. *v.* McGee

No. 40907 November 10, 1958 106 So. 2d 394

*Ethridge, Minniece & Bourdeaux,* Meridian, for appellants.

*Frank S. Shanahan, Jr.,* Vicksburg, for appellee.

LEE, J.

Sylvester M. McGee, earning an average weekly wage of $96, suffered a heart attack on December 27, 1956, while working in the employ of L. B. Priester & Son at Meridian. The attorney-referee, after a hearing, awarded him temporary total disability of $25 per week from December 28, 1956 to April 1, 1957, and $25 per week under Sec. 8 (c) (21) of the Workmen's Compensation Law, thereafter, together with all expenses for medical services and supplies. On successive appeals by the employer and its insurer to the commission and the circuit court, the award was affirmed; and they have appealed to this Court.

McGee had sustained a heart attack on October 20, 1952 while engaged about his work at Biloxi. For that injury, he settled with his employer, under the Workmen's Compensation Act, for a lump sum of $4,000. At the time he was attended by Dr. Norman W. Todd. On May 15, 1954, he became gainfully employed. His doctor advised him to limit his activities to finishing carpenter work where he would handle light materials and do his work leisurely without emotional or physical strain. He was seen professionally by the doctor from time to time. In his first job, from May until October 1954, he made vanity dressers. In his second job from November 1954 until May 1955, his work consisted largely of cabinet making. Thereafter he was employed in several instances as a general carpenter. He was a diabetic and

took insulin regularly. Except for occasional anginal pains, he was able to do his work and got along very well and without any substantial loss of time.

In the early part of November 1956, his union referred him to L. B. Priester & Son on a job at Meridian. He asked for foreman duty, but such position was not open. On December 27, 1956, in the fifth week of this employment, he was assisting in the installation of steel beams. He and his companion, on a scaffold, were using a heavy chisel and hammer to cut the metal overhead. While doing this, he experienced a sensation like a bad sore throat and could scarcely get his breath. He immediately came down off the scaffold, rested a while, drove to his home in Newton, called Dr. Todd and was subsequently admitted to the hospital where he spent an aggregate of 36 days.

Dr. Todd testified that McGee's attack of December 27, 1956, was a severe coronary occlusion with infarction, and that his work at the time had a part in precipitating the attack. He said that there had been a normal healing after the 1952 episode, although the basic disease continued; and that the 1956 attack was a separate and distinct coronary occlusion rather than a continuation of the 1952 attack. The doctor also said that McGee reached maximum recovery on April 1, 1957. He was of the opinion, on the day of the trial, that the patient was not then, nor would he in the foreseeable future be, able to work at any gainful employment. He estimated that there had been a 50 per cent loss of function as a result of the first episode and 50 per cent of what was left as a result of the second attack. The reason why he had advised his patient to do light carpenter work was in order to reduce physical and mental exertion in the hope that subsequent attacks might be prevented.

Although the claimant contended that he quit work for Wilson Manufacturing Company on account of a difference with Wilson's brother, Wilson testified that, while McGee's work was satisfactory, he discharged him be-

cause Dr. Todd advised him that he would not work the man.

E. C. James testified that, on an occasion when McGee was at work for him finishing the walls of a room, he appeared to be bothered in doing overhead work and that, on the last day, he seemed "overly tired."

Dr. B. Joseph Price, a witness for the employer, having the benefit of Dr. Todd's records, made an examination of McGee, and arrived at the same physical findings. It was his opinion that the claimant had a severe arteriosclerotic disease with marked involvement of the coronary arteries accompanying diabetes. He said that Dr. Todd's records showed that McGee had been able to do the usual type of carpenter work which he had been accustomed to without too much difficulty from the date of his recovery from the attack in 1952 and until the attack in 1956; and that in his several occupations he had gotten along quite well. He could not see any causal relationship between the activity in which McGee was engaged at the time and the coronary occlusion that he suffered. He explained that people, who have heart attacks, are inclined to do too little; and that he allows his patients to fish, hunt, and continue their usual exercises as long as they avoid strain which produces pain or extraordinary fatigue. He did concede that "occasionally exertion, especially a strain of an extraordinary nature, may precipitate some sequence of events which would develop into a block of the coronary artery." On cross-examination, he was asked: "I am correct in assuming from your testimony that Mr. McGee's medical history was of such a nature that he would be more prone to become victimized by a heart attack from exertion than a normal person?" And his reply was: "I did not say that. I don't think he would be prone to have a heart attack from exertion. I think he would be more prone to have a heart attack than the normal individual, shall we say. He is more subject to angina as a result of exertion."

As grounds for the reversal and disallowance of the award, the appellants assign and argue that (1) appellee's employment was obtained by concealment and misrepresentation of his physical condition, and (2) the disability did not arise from an "accidental injury" within the purview of the Workmen's Compensation Law.

■■■ ■ The appellee admitted that he did not tell Priester, at the time of his employment, about his previous heart attack in 1952 or the state of his health since. He said that Priester did not require a physical examination and did not ask him anything about the previous or then state of his health. He further testified that his employment, after he returned to work in 1954, was more or less constant; that he had not been disabled at any time thereafter; and that he did not think it necessary to tell Priester what had happened four years previously. He did not make any misrepresentation. In fact, he made no representation about the matter whatever. Nothing transpired to evince any desire on the part of Priester to ascertain any information about the previous state of the appellee's health. In other words, there was no proof whatever on which to base a claim that the appellee concealed or misrepresented the state of his physical condition.

The appellants further contend that Dr. Todd advised McGee, on his return to work after the heart attack in 1952, that he should do light work; that this had the effect of warning him that if he continued to do regular carpenter work, he would likely have another attack; that, when he chose to do regular carpentry work, another attack could reasonably be expected; and that, consequently the attack of 1956 was not unexpected or accidental within the meaning of the Workmen's Compensation Law.

■■■ ■ "The word 'accident' has been held to have a generally accepted meaning as something happening without design and being unforeseen and unexpected to

the person to whom it happens * * *.'' 99 C. J. S., Workmen's Compensation Sec. 153, page 526. ''* * *, a casualty occurring without expectation or foresight is contemplated, * * * something unusual, unforeseen, or unexpected; * * * an unlooked for and untoward event which is unexpected and undesigned.'' Sec. 154, page 528 thereof. As to the question by whom the event must be unexpected, unforeseen, or undesigned, Sec. 155 of the above text at page 533 says: ''Within the meaning of the statutory word 'accident' and the like, as used to indicate when compensation shall be paid, and construed to mean an unlooked for and untoward event which is not expected or designed, *it is the expectation, intention, or design of the workman that is to be regarded.*'' (Emphasis added.)

Larson's Workmen's Compensation Law says that the event is accidental ''if the employee, by a miscalculation of his own strength, inadvertently hastened his own death by exertion that caused the final breakdown.'' Vol. 1, Sec. 38.83, page 566. It cites the English case of Fenton v. Thorley & Co., Ltd. for the basic ingredient of ''accident'' as '' * * * an unlooked for mishap or an untoward event which is not expected or designed.''

Dunn's Mississippi Workmen's Compensation Sec. 84, page 68 says: ''An injury must be accidental, but the term is interpreted from the viewpoint of the employee. It is generally construed as meaning an occurrence which is neither expected, designed nor intentionally caused by the workman.''

This Court in Hardin's Bakeries, et al. v. Ranager, 217 Miss. 463, 64 So. 2d 705, in holding the injury to be accidental within the purview of the Workmen's Compensation Law, where the employee of a bakery, required to use a baker's pad or mitten in handling the hot pans of bread as they came from the oven, on that account suffered a trouble known as contact dermatitis, which ultimately resulted in his having to quit work altogether,

cited and quoted with approval from 58 Am. Jur., Workmen's Compensation, Sec. 196, page 705, the part of which, material to the present question, being as follows: "It has been stated that the word 'accident' as used in the phrase 'injury arising by accident', and similar expressions, in compensation statutes, are to be interpreted in the popular and ordinary sense, and as having a wide signification. According to some authorities, it is to be construed liberally in favor of the workman. It is generally construed as meaning an occurrence which is neither expected, designed, nor intentionally caused, by the workman, and so, as to injuries unintentionally resulting from the acts of the latter, is employed in contradistinction to the expression 'wilful misconduct', which is found ordinarily in the same section or paragraph of the statute. It has been stated that an injury is unexpected, so as to bring it within the category of 'accident', in this connection, *if the workman did not intend or expect that it would result on the particular occasion from what he was doing. The mere apprehension that an injury such as did occur was likely to occur at some indefinite time in the future does not deprive the occurrence of its accidental character."* (Emphasis added.) The above opinion also collated other authorities on this question.

■■ Where there is a wilful intention of the employee to injure himself, compensation is not payable under the Workmen's Compensation Law, Sec. 4, Chap. 354, Laws of 1948, Sec. 6998-04, Code of 1942, Rec. Having had one heart attack, McGee perhaps had some apprehension that he would ultimately have another; but such mere apprehension did not "deprive the occurrence of its accidental character" on this occasion. Self-preservation is one of the first laws of nature, and it is incredible that, after being able to work more or less constantly for 2½ years, he had a reasonable anticipation that he would be stricken in that manner on that particular occasion. There is no sound basis upon which to ad-

judicate that his intention or expectation of a probable second heart attack on the particular date of his injury was so strong as to strip the occurrence of its accidental character.

In the case of Ernest Waters Const. Co. v. Mills, 51 So. 2d 180, a Florida case, cited by the appellants, Mills was stricken with a dermatitis for which under agreement, he was paid medical expenses and compensation for 20 weeks and was pronounced cured. He took employment with a second employer, was again attacked by the dermatitis, and was again paid compensation therefor by his first employer, at which time he was again pronounced cured. He took employment from two subsequent employers with like results. The point for determination in the case was whether Mills was entitled to full temporary total disability payments of indefinite duration from his first employer for time lost while working for the subsequent employers. The opinion said that, "The burden was on the claimant to show that his total incapacity between September 1947 and his subsequent incapacities resulted from the first attack and not from some independent intervening cause. * * * The rule seems well settled that the doctrine of causal relationship is applicable to Workmen's Compensation cases." It was said that, "He was bound to know the probable effect of his disobedience" of the doctor's instructions to steer shy of damp weeds, etc., and that his voluntary actions in so doing broke "the line of causation between his original and his subsequent attacks."

The present controversy is not between McGee and his employer in 1952, when he had his first attack. His claim is against his employer in 1956 because of the lighting up or acceleration of his pre-existing infirmity at a time when, according to his sworn testimony he had theretofore, for a period of 2½ years, been able to do his work satisfactorily.

There was ample evidence to justify the award for the disability as being the proximate result of an accidental

injury within the purview of the Workmen's Compensation Act; and the judgment of the circuit court, so approving, is affirmed.

 ██ McGee died on March 12, 1958, after 62 4/7 weeks of total temporary and permanent partial benefits of $25 per week or a total of $1,514.30, had accrued and were due and payable. The cause has been revived in the names of his heirs at law, who are entitled to collect the foregoing amount, plus interest and damages, but no more under this award. M. T. Reed Construction Co. v. Martin, 215 Miss. 472, 61 So. 2d 300, 63 So. 2d 528.

The question of an attorney's fees is also raised. The appellee contends that the attorney is entitled to ⅓ of the original award for 450 weeks. He cites American Sur. Co. of New York v. Boykin, 212 Miss. 310, 54 So. 2d 398, and Jim Nix Cafeteria v. Burton, 226 Miss. 206, 84 So. 2d 164, but, in those cases, both of the claimants were alive at the time of the entry of the final order of award.

The last paragraph of Sec. 6998-32, Code of 1942, Rec., provides as follows: *"When an award of compensation becomes final*, and an attorney fee is outstanding, a partial lump sum settlement sufficient to cover the attorney fee approved therein by the commission shall be made immediately, from payments last to become due, and the deductions allowed by the law shall be borne equally by the attorney and the client." (Emphasis added.)

 ██ Successive appeals were taken from the order of the attorney-referee, the commission and the circuit court. Consequently the payment of the award has been held in abeyance. Now that the Court is affirming the award, it appears that the claimant is dead. Consequently the Court can award as an attorney's fee, only ⅓ of the amount of the award which had accrued prior to the death of McGee, namely, ⅓ of the $1,514.30 plus interest from the due date of each payment and plus 5 per cent damages; and that will be the order thereon.

The cause is therefore affirmed and an attorney fee is allowed and approved.

Affirmed, attorney's fee approved, and remanded to the commission.

*Roberds, P. J.,* and *Hall, Kyle,* and *Holmes, JJ.,* concur.