Shivers *v.* Biloxi- Gulfport Daily Herald, et al.

No. 41075 April 6, 1959 110 So. 2d 359

304

*Robert E. Arrington, Carl E. Berry, Jr.,* Hattiesburg, for appellant.

*Kennon R. Smith,* Jackson; *P. D. Greaves,* Gulfport, for appellees.

ETHRIDGE, J.

In this workmen's compensation case the principal question is whether the Commission was warranted in finding that the employee did not receive an accidental injury. We think the undisputed evidence requires a conclusion to the contrary.

The claimant, Willie Shivers, averred that he had a heart attack while at work on November 14, 1956, and his work aggravated and accelerated a pre-existing heart disease. The claim is solely for total permanent disability benefits. Claimant died about two years after the alleged accidental injury, and this appeal has been revived in the name of his widow and sole heir, Angie Shivers.

Shivers, forty-eight years of age, had been employed as a janitor since 1950 by the Biloxi-Gulfport Daily Herald. The last day he worked for the newspaper was November 14, 1956. It is undisputed that for several years prior to that date Shivers suffered from a hypertensive cardio-vascular disease. Dr. Joseph G. McKinnon said he treated Shivers on a number of occasions before November 1956. Dr. Felix H. Dunn, who testified for the employer, diagnosed his previous condition as cardiac asthma, or a cardiac condition complicating his asthma.

As we see it, the testimony of Shivers and his wife, that he had a heart seizure or attack on November 14, 1956, while working, is undisputed by any other evidence

in the record. He said he did general janitorial work, running errands, getting press plates out of the car, "trucking" papers and loading bundles of paper weighing around fifty pounds in a truck. While loading these papers he became sick and felt a hurting in his side and chest, and then over all of his body. He "just felt like something was coming loose inside" of him. He had been able to do his work before that time. His wife testified that, when Willie came home that day, he told her he felt as if something had "torn loose" in him. He was ill and stayed at home for two weeks. On November 28, 1956, Dr. Dunn put him in the hospital for several weeks. Subsequently he spent some time in a veteran's hospital. Both of the doctors who testified, and also claimant and his wife, said that after November 14 he was totally and permanently disabled because of his heart. Before that date, Shivers was able to do his work for the employer, but from time to time in the preceding two years he had been ill.

Although the testimony of Shivers and his wife was undisputed that he suffered a heart seizure or attack on the day in question, the attorney-referee nevertheless held that claimant failed to prove that he suffered an accidental injury arising out of and in the course of his employment. The Commission affirmed the attorney-referee, with one commissioner dissenting. The circuit court affirmed the Commission's order.

■■ ■ The work must be only a contributing and not the sole cause of the injury. The injury is compensable if the employment aggravated, accelerated or combined with the disease or infirmity to produce the disability or death for which compensation is sought. W. G. Avery Company v. Hall, 224 Miss. 51, 79 So. 2d 453, 80 So. 2d 53 (1955). ■■ ■ Moreover, evidence which is uncontradicated or undisputed should ordinarily be taken as true by the trier of facts, if it is not inherently improbable or unreasonable. It cannot be arbitrarily disregard-

ed. Lucedale Veneer Company v. Rogers, 211 Miss. 613, 53 So. 2d 69 (1951); Reyer v. Pearl River Tung Company, 219 Miss. 211, 68 So. 2d 442 (1953).

There is no dispute as to the testimony of Shivers and his wife that while he was working on November 14, 1956, doing heavy lifting, he suffered a heart seizure or attack; that he had been doing his work before this time, and after it he was totally and permanently disabled. It is true that Shivers said he reported the injury to one of his superiors, and the superior denied that. However, he unquestionably reported it to someone at the newspaper plant, because he was furnished an application form and shortly began receiving disability benefits under a non-industrial policy which the newspaper carried. Witnesses for the newspaper admitted they knew he was receiving these disability benefits. So we do not think that circumstance constitutes any impeachment of claimant's testimony on the main issue. Claimant's statement that a superior at the newspaper gave him $20 to go to a doctor was also denied, but that contradiction would not warrant the Commission in disregarding the testimony of claimant and his wife that he suffered a heart seizure while at work. This contradiction is simply immaterial on the controlling issue. Doctors McKinnon and Dunn stated they did not remember whether Shivers, in giving the history of his case, told them he had suffered a heart attack on November 14, 1956. Dr. Dunn had previously discarded claimant's file. Their failure to remember does not contradict claimant's testimony concerning the fact of the attack. Claimant said that after the attack he went to see Dr. Dunn, who told him he had heart trouble. Dr. Dunn did not remember when in November 1956 he saw Willie. This does not contradict Willie's testimony that after he had the attack he went to Dr. Dunn.

It is also contended that the injury was not accidental, because Shivers knew that he had a serious

heart disease and had been told by his employer not to do any heavy lifting. However, the fact that he inadvertently hastened his own disability by exertions on the job does not deprive the occurrence of its accidental character. L. B. Priester & Son v. McGee, 106 So. 2d 394 (Miss. 1958).

██ █ Moreover, it is well established that an accidental injury need not result suddenly or from the immediate application of external force. The injury may accrue gradually over a reasonably definite and not a remote time. Weeks of work and strain may lead to the disability. Hardin's Bakeries v. Ranager, 217 Miss. 463, 64 So. 2d 705 (1953); Insurance Department of Mississippi v. Dinsmore, 104 So. 2d 296 (Miss. 1958). Shivers suffered from a cardiac disease before the injury which resulted in his total disability, but he was able to work most of the time prior to November 14. The employer takes the employee as he finds him, and appellee was well aware of claimant's pre-existing heart condition. It is not disputed that Shivers suffered the heart seizure or attack on that date, and subsequently he was totally and permanently disabled.

██ █ The only fact which renders this case any different from the numerous other heart cases we have had in the past few years is that claimant did not go to a hospital immediately after his heart seizure or attack on the job, but instead stayed at home for two weeks, before his visit to the hospital. That fact does not negative the injury on the job. In some cases it might be relevant on the extent of disability, but it is not so here. The testimony of both doctors was unequivocal that physical exertion would accelerate and precipitate claimant's disability, and, if Shivers was doing what he said, such exertions would and did contribute to his disability. ██ █ Claimant's evidence of his injury is undisputed, and the Commission had no right to arbitrarily disregard it.

 The judgment will provide for interest from the respective due dates of the compensation payments. Five percent damages under Code Section 1971 are not allowable, because we are not affirming an award. Appellant requests an attorney's fee in the amount of 33-⅓ percent, but counsel's written contract for "services rendered and to be rendered" provides for a fee of 25 percent of the sum recovered. This Court cannot make a new contract for the parties or add to the terms of the contract which they have made. Alexander Smith, Inc. v. Genette, 98 Miss. 2d 455, 462 (Miss. 1957). The judgment will provide for an attorney's fee of 25 percent of the amount recovered.

Reversed, judgment rendered awarding total permanent disability benefits to claimant, and cause remanded to the workmen's compensation commission.

*Hall, Lee, Holmes,* and *Arrington, JJ.,* concur.

*Kyle, J.,* dissenting.

GILLESPIE, J., dissenting:

I respectfully dissent.

In my dissent in the case of Central Electric Power Association, et al. v. Lottie Hicks, No. 41,096, this day decided, I attempted to show that this Court disregarded the established law that the Commission is the trier of the facts and that this Court will not reverse the Commission if its order is supported by substantial evidence. This is another case where the Court, in my opinion, has disregarded the rule just stated and has again undertaken to reverse the Commission on purely factual issues after sifting, weighing, rejecting, and accepting the evidence according to its own views, and drawing its own inferences from the evidence. It is another instance of this Court attempting to take away from the Commission the power vested in it by the legislature and assuming to substitute its own conclusions on factual issues. If this

Court is going to disregard the Commission as the trier of facts, we should say so, and lay down a plain and understandable rule so that the bench and bar can understand this change in the jurisprudence of this State.

Justice Roberts, in the case of Duncan v. Magette, 25 Texas 245, said: ''Whoever undertakes to determine a case solely by his own notions of its abstract justice, breaks down the barriers by which the rules of justice are erected into a system and thereby annihilates law.''

The following facts are found, not by the Commission but by this Court, as being essential to the result reached by this Court: (1) That Shivers was lifting heavy bundles of paper weighing fifty pounds, and while so doing became sick. The majority says this is undisputed. (2) That Shivers had a heart seizure or attack on November 14, 1956. The majority opinion says the evidence of this fact is undisputed.

The record shows that Shivers said, ''I taken sick'', when he was ''picking them heavy bundles.'' He alleged in his B-5 form that this happened when he was lifting a heavy press plate, and when reminded of this by his attorney, he then said he began hurting in his side and chest when he picked up a heavy press plate. He then said he reported this to his foreman, Mr. Gilly, then talked to Mr. Wilks, the owner, who gave him $20.00 and told him to go to a doctor. Both Gilly and Wilks denied that Shivers told them anything of the kind. Mr. Wilks testified, and it is not denied, that about a year and a half prior to November 14, 1956, when Shivers claimed he ''took sick,'' it was learned that Shivers had heart trouble and at that time Shivers was given specific instructions not to lift anything heavy around the place. Mr. Gilly testified that when he learned that Shivers had heart trouble he hired another janitor to do the heavy work and that all Shivers had to do was to do some cleaning and run errands. Shivers said no one saw him do the lifting, yet the plant has many employees. Mr. Gilly and Mr.

Wilks testified the bundles of paper Shivers claims to have lifted would weigh 15 to 30 pounds. How can this Court of review say it is undisputed that Shivers sustained an injury while lifting bundles of paper weighing 30 pounds?

Shivers' testimony is self-contradictory as to whether he took sick when lifting papers or when lifting the press plate. He is overwhelmingly impeached as to his statement that he reported an injury to Gilly and Wilks. He was under instruction not to do any lifting and there was no need or occasion for his doing so. According to his own testimony, he was alone where no one could see him, in a newspaper plant with 102 employees.

Now the majority says it is undisputed that Shivers had a heart seizure or attack. Shivers did not say he had a heart attack. He did not even contend that the doctors told him he had a heart attack. Dr. Dunn did not say he had a heart attack. Dr. McKinnon did not say he had a heart attack. The foreman and manager at the plant knew nothing whatsoever of any heart attack. No one has testified that Shivers had a heart attack. Moreover, while Shivers claimed that he left the plant and went to see a doctor, the doctor did not put him in the hospital, and did not even remember Shivers seeing him at that time. In fact, Shivers did not go to the hospital until two weeks later. Significant, too, is the fact that Shivers did later go to the Veterans Hospital and have an appendicitis operation.

In Section 38.83 of Larson's Workmen's Compensation Law, it is said, in connection with the basic problem of medical causation, that, "There must still be an *unexpected result*, and there must still be an exertion—some exertion, capable of causing the *collapse*. This can by no means be taken for granted." (Emphasis added)

The majority opinion recognizes that to award compensation in connection with a heart condition there must be some episode commonly called a heart attack. I do not

recall any case where this Court has awarded compensation where there was no such episode.

I think this record shows, and certainly the Commission had a right to find, as stated by Dr. McKinnon, the claimant's physician, that Shivers had a progressive degenerative disease of the heart. Dr. McKinnon said that his records of many examinations showed a progressive worsening of his disease from the beginning date until the last time he saw him. Dr. McKinnon summed up his appraisal by saying, "Certainly he is suffering from a disease that is simply taking its course now." At the time of the trial, Shivers was undoubtedly totally disabled. Dr. McKinnon said that any work would tend to aggravate a heart condition. But the trouble with this record is that I find no medical proof actually connecting the *disability* with the obligations of his employment. Dr. McKinnon did not see this patient for a period of three and one-half months before the alleged occurrence on November 14, 1956, nor until January 14, 1957, or two months after the alleged occurrence of November 14, 1956.

It is significant that the question put to Dr. McKinnon was based on him doing heavy lifting, which the Commission certainly could find that he did not do as already indicated, and while he said that any work would tend to aggravate his degenerative condition, *he did not say that it did;* and all the time he was treating Shivers he did not advise him not to work. It is true that statements can be found in the lengthy testimony of Dr. McKinnon that are favorable to appellant, but it seems to me that the Commission was justified in finding from his testimony as a whole that the obligations of Shivers' employment did not have any substantial connection with the progressive worsening of his degenerative heart disease.

Dr. Dunn did not have any records and he stated that he did not remember seeing Shivers on November 14, 1956, the day this Court says Shivers had a heart seizure

or attack. Dr. Dunn did say that any kind of work would aggravate Shivers' condition, but nowhere that I can find did he say that it *did* aggravate his condition. Dr. Dunn said: "A person who is a cardiac, of course, work might aggravate the condition. Absence of work might not make it any better. I have a bad heart, I have this bad heart, if I work it will get worse, that is definite, but if I don't work, it doesn't mean it is going to improve." Dr. Dunn said that he didn't know what Shivers' duties were and he would not feel qualified to answer the question asked him about aggravation.

Shivers said he went to the doctor on November 14, 1956, (which the doctor does not recall); that he knew he had been suffering from heart trouble, and he had been off sick for various periods, sometimes as much as from a few weeks to a month or so, from time to time—"off sick"; that on November 14, 1956, the day he claimed he was injured, he was off again with the "same trouble". Shivers did not know when he went to the hospital after the alleged accident on November 14, 1956, but his wife testified that he went to the hospital on November 28, 1956. Shivers and his wife both testified that he later went to the Veterans Hospital in Jackson and had an appendicitis operation.

Nowhere in this record is it shown what Shivers was doing from November 14, 1956, until he went to the hospital on November 28, 1956. Presumably he was at home, but there is nothing to show that he had any heart seizure or attack, and I do not think this Court has the right to make that diagnosis. Certainly it cannot say that it is undisputed that he had a heart seizure or heart attack.

The majority seems to put considerable emphasis on the fact that while the superiors to whom Shivers stated he reported his alleged accident denied that Shivers made any report to them, that someone must have had such a report or they would not have filled out insurance papers for him. The record clearly shows that Shivers had pre-

viously drawn sick insurance and that the lady who handled these papers testified that Shivers asked for insurance forms. Whether he came to the office personally sometime after November 14, 1956, or wrote for them is not shown, but the employers' witness showed that this was nothing unusual for Shivers to be asking for insurance blanks because he had been doing it before.

I have gone to perhaps needless length to point out aspects of the evidence in this case but I have had a purpose in doing so. I have done so to demonstrate that this Court is not performing its constitutional duty when it undertakes on such a record as this to sift out and find the facts. I am wholly unable to understand how we can say there is no substantial evidential basis for the Commission's conclusions in this case, or that the Commission's finding was "clearly erroneous."

*McGehee, C. J.,* and *Roberds, J.,* join in this dissent.