291 So.2d 560 (1974)
Percy JENKINS
v.
OGLETREE FARM SUPPLY and United States Fidelity and Guaranty Company.
No. 47437.
Supreme Court of Mississippi.
March 11, 1974.
*561 Laurel G. Weir, Philadelphia, for appellant.
Singley, Minniece, Hamilton, Neville & Hamill, Meridian, for appellees.
RODGERS, Presiding Justice.
This is a workmen's compensation case. The attorney-referee determined that as a matter of fact the claimant was suffering from asthma and emphysema and that because of inhaling dust particles, his condition was aggravated; but that the aggravation of his condition was not an accidental injury "within a reasonable definite and not too remote period of time while performing, or as the result of, duties arising out of and in the course of his employment." The full Workmen's Compensation Commission affirmed the order of the attorney-referee as to "fact" and "law". On appeal to the Circuit Court of Newton County, Mississippi, the order of the Workmen's Compensation Commission was affirmed.
The case is now before this Court on a question of law inasmuch as the order of the attorney-referee holds as a matter of fact that the condition of the claimant was aggravated by the breathing of dust caused by his work.
In order to properly present the question of law it is necessary to relate the facts on which the claim is based.
The claimant Percy Jenkins went to work for Ogletree Farm Supply Company in 1963 and worked for his employer until late February, 1969. Claimant was in reasonably good health at the time he was employed, although he had a "touch of asthma". He was able to do heavy manual labor. His primary work involved driving a spray spreader truck putting out fertilizer. At other times, he helped load bag fertilizer. He also "put out" or spread lime on farmland. He was constantly subjected to caustic spray or dust from lime or fertilizer. About 18 months after he went to *562 work, his breathing was affected and his condition worsened until 1964, when it became necessary for him to go to the hospital. Dr. Laird began treating claimant after he went to work for the Ogletree Farm Supply Company, and he suggested that the claimant wear a mask or drive an air-conditioned truck. The doctor testified that from 1965 until 1968 claimant's condition had worsened. He saw him again in 1971, and testified that his condition was about the same as in 1968, because at the time he saw him "he had not been in contact with this for that period of time." He testified that working around the dust and chemicals definitely aggravated claimant's condition, and accelerated his condition to make it worse. He said claimant was now totally disabled.
Dr. George Owen, an expert allergist, testified that asthma was a condition and not a disease, and that asthma would develop into emphysema. He admitted, however, that the claimant's condition would be "probably aggravated" because of doing his normal work in spreading fertilizer.
The record in this case shows that the claimant was injured, in that his previous condition was aggravated and accelerated because of the dust and chemicals he was forced to breathe while engaged in his employment. The appellees first contend that the appellant's claim for compensation is barred by the two-year statute of limitations [Mississippi Code Annotated Section 71-3-35 (1972)]. Evidence was heard by the attorney-referee on this issue and he determined "That claimant terminated his said employment between February 20 and 25th, 1969." This date was well within the two years in which the claimant was permitted to file his claim. The appellees did not appeal from this ruling and are, therefore, bound by the order of the Commission.
It is argued by appellant that the word "accident" as used in the phrase "injury arising by accident" is generally construed as being "an occurrence which is neither expected, designed, nor intentionally caused by the workman." [Citing Petroleum Equipment Company v. Lancaster, 197 So.2d 485 (Miss. 1967).]
Appellees then argue that there was no "accident" since the claimant had been informed by the doctors that his condition would worsen regardless of the environment in which he lived. This argument overlooks the doctor's statement that from 1968 to 1971 his condition remained the same because he was not subjected to the dust and chemicals. The question here is whether or not the gradual worsening of claimant's condition during this six-year span is a compensable injury.
The following passages from Dunn's treatise on workmen's compensation provide some insight on this issue:
"An injury must be accidental, but the term is interpreted from the viewpoint of the employee. It is generally construed as meaning an occurrence which is neither expected, designed nor intentionally caused by the workman.
* * * * * *
... [I]t is now well settled that an injury may be accidental although it occurs in the usual course of employment and involves only the usual exertion.
* * * * * *
If usual exertion combines with the employee's physical condition to bring about disability to the particular individual, this is enough to meet the requirement of accidental injury, although there is no unusual or external happening or force; nor is it necessary that there be a sudden happening but the onset of disability may be gradual and progressive and not immediately perceivable." Dunn, Mississippi Workmen's Compensation, *563 § 147 at 188, § 148 at 189, § 149 at 190 (2d ed. 1967).
Although Jenkins' prior asthmatic condition may have played a part in his ultimate disability, it is well settled that where a claimant's employment contributes to his condition, the injury is compensable. In the case of Rathborne, Hair & Ridgeway Box Co. v. Green, 237 Miss. 585, 594, 115 So.2d 674, 676 (1959), it was stated that:
"The rule in this State is that when a preexisting disease or infirmity of an employee is aggravated, lighted up, or accelerated by a work-connected injury, or if the injury combines with the disease or infirmity to produce the disability, the resulting disability is compensable."
Accord, Lee v. Lumberton Manufacturing Company, 198 So.2d 823 (Miss. 1967).
With reference to causation, we have said: "An injury arises out of the employment when there is a causal connection between it and the job." Earnest v. Interstate Life & Accident Insurance Co., 238 Miss. 648, 652, 119 So.2d 782, 783 (1960).
From the foregoing facts and authorities, it is clear the Jenkins' disability can be characterized as an accidental injury arising out of and in the course of his employment.
The next issue is whether or not the injury occurred within a reasonably definite and not too remote period of time. Although the attorney-referee specifically found causation in this case, recovery was denied on the grounds that the evidence was insufficient to establish that claimant sustained an accidental injury within a reasonably definite and not too remote period of time. It is stated in Dunn that:
"An accidental injury need not result suddenly form the immediate application of external force. The onset of disability may be gradual and progressive and the ultimate disability may result from the cumulative impact of activities occurring in employment and operating upon the employee's body or his physical weaknesses or infirmities. * * * But the rule has its limits. The accrual of the disability must relate to a time which is reasonably definite and not remote." Dunn, Mississippi Workmen's Compensation § 150, at 193-194 (2d ed. 1967).
Further, it is said:
"A certain fixed and definite event first is required from which time can be calculated. Once a starting point is found for measuring time, a measure which is `reasonably definite and not remote,' within the requirement of the rule, is not susceptible of precise definition but must be determined on the facts of each particular case." Dunn, Mississippi Workmen's Compensation § 150, at 22 (Supp. 1972).
In the case at bar, claimant's condition grew progressively worse from 1963 to 1969, when he quit his job on the advice of two doctors. The injury may have been gradual, but it is clear that the working conditions aggravated his asthma and emphysema. It was pointed out in 1A Larson, Workmen's Compensation Law, Section 39.10, at 7-204 (1973):
"[M]ost jurisdictions have at some time awarded compensation for conditions that have developed, not instantaneously, but gradually over periods ranging from a few hours to several decades, culminating in disability from ... asthma, emphysema, ..."
As to the requirement of a "fixed and definite event", Larson states:
"The practical problem of fixing a specific date for the accident has generally been handled by saying simply that the date of accident is the date on which disability manifests itself ... However, for certain purposes the date of accident may be identified with the onset of pain occasioning medical attention, although the effect of the pain may have been merely to cause difficulty in working *564 and not complete inability to work." 1A Larson, Workmen's Compensation Law, Section 39.50, at 7-227, 7-228 (1973).
The following Mississippi cases are illustrative of the "gradual injury" concept.
In Shivers v. Biloxi-Gulfport Daily Herald, 236 Miss. 303, 110 So.2d 359 (1959), the claimant was employed as a janitor for six years before becoming disabled in 1959. For several years prior to that date, he had been suffering from hypertensive cardiovascular disease. In granting compensation the court pointed out that, "The work must be only a contributing and not the sole cause of the injury." [236 Miss. at 308, 110 So.2d at 361]. The Court went on to say that: "[I]t is well established that an accidental injury need not result suddenly or from the immediate application of external force. The injury may accrue gradually over a reasonably definite and not a remote time." [236 Miss. at 310, 110 So.2d at 362]. Accord, Mid-South Packers, Inc. v. Hanson, 253 Miss. 703, 178 So.2d 689 (1965).
In Mississippi Stationery Company v. Segal, 214 So.2d 820 (Miss. 1968), the employee suffered a cerebral hemorrhage while at work. The Court found that her work contributed to her death and the injury accrued over a period of four to five months.
Gradual injury was again discussed in Hardin's Bakeries v. Ranager, 217 Miss. 463, 64 So.2d 705, 65 So.2d 461 (1953). The employee was allergic to the baking mittens used in his work and developed contact dermititis. In reaching its decision to allow compensation, the court discussed several cases from other states. In Webb v. New Mexico Publishing Co., 47 N.Mex. 279, 141 P.2d 333 (1943), the court stated, "An injury may be gradual and progressive, and not immediately discoverable; yet certainly and definitely progress to discovery and then to a compensable injury." [141 P.2d at 337] The Court also discussed Vogt v. Ford Motor Co., 138 S.W.2d 684 (Mo. App. 1940) where the claimant's preexisting asthma was aggravated by the inhalation of fumes and dust over a five-month period and compensation was awarded. It was held by this Court that:
"From the foregoing authorities we conclude that under our compensation law it is not necessary that an accidental injury as therein defined must result suddenly nor is it necessary that it result from the application of external force." 217 Miss. at 469, 64 So.2d at 708.
In the case of Jackson Ready-Mix Concrete v. Meadows, 198 So.2d 576 (Miss. 1967) the claimant began working for his employer in 1958. A year later, it was determined that he had tuberculosis. He returned to his job the following year when the disease became inactive. In 1963, the claimant suffered a pulmonary hemorrhage on the job as a result of active tuberculosis. The claimant argued that the reactivation of his tuberculosis occurred over a reasonably definite time as established by dates of the following X-rays  September, 1959, tuberculosis inactive; March, 1962, unfavorable change in lung; September, 1962, continuing unfavorable change; February, 1963, hemorrhage. After stating that an injury may accrue gradually over a reasonably definite time, the court held: "Medical explanation of the significance of claimant's x-rays provides sufficient medical evidence that accural of claimant's tubercular reactivation was confined to a reasonably definite period of time." [198 So.2d at 579] Since there was medical evidence that claimant's work probably played a part in reactivating the preexisting disease, the Court awarded compensation.
Comparing the above cited case to the facts at hand, the claimant, Jenkins, suffered from a mild case of asthma when he began working in 1963, but could ably perform his labor. He complained of breathing difficulties to Dr. Laird while hospitalized for stomach problems in 1964. *565 In 1965, claimant was treated for emphysema. He was hospitalized for four days in 1968 for emphysema. In February, 1969, claimant's condition had progressed to the stage where he was advised by Drs. Laird and Ferguson to quit his job. Based on the rationale applied by this Court in Jackson Ready-Mix Concrete v. Meadows, supra, it is apparent that the dates mentioned above would supply the necessary evidence for proving that Jenkins' gradual injury occurred within a reasonably definite and not too remote period of time.
A similar situation was involved in Trinity Concrete Products Company v. Gabriel, 475 P.2d 146 (Okla. 1970). The claimant worked for three years as a crane operator and was exposed to a great deal of dust. During the summer of 1968, he began suffering from lack of breath. He quit his job on October 1, 1968, for the express purpose of avoiding the inhalation of so much dust. A doctor testified that the employee suffered lung and bronchial tube damage as a result of the prolonged breathing of the dust. The employer argued that no accident occurred on October 1, 1968, requiring claimant to quit his job. The Court held that the above date marked the time when claimant's disability became so acute as to make him quit his job.
By the same theory, it can be said that Jenkins' accidental injury occurred at the time he quit his job, after being advised to do so by his doctors.
In Scobey v. Southern Lumber Co., 238 S.W.2d 640 (Ark. 1951), the claimant worked for twenty-five years in a lumber mill, during which time he was exposed to emery dust, steel filings and sawdust. The medical testimony was to the effect that the constant inhalation of these dusts caused an irritation in the lung which aggravated a cancerous condition. One doctor testified that the cancer developed approximately a year and a half before his death. The court recognized the argument that no definite date could be fixed for the accident, but allowed recovery holding that only a reasonably definite time was required. The court said that the fact that the cancer developed gradually made it no less an accident.
The Supreme Court of Florida addressed the "gradual injury" issue in several cases. In Czepial v. Krohne Roofing Company, 93 So.2d 84 (Fla. 1957), the employee, a roofer, was exposed to tar fumes and dust from marble chips and pea rock. He was later disabled by tuberculosis and sued for compensation. The Commission denied recovery saying that the acceleration or aggravation of claimant's tubercular condition was not an "accident". The court discussed Scobey v. Southern Lumber Co., supra, and several other out-of-state cases and held:
"[W]e agree with the decisions from other jurisdictions, cited above, holding in effect that the fundamentally accidental nature of the injury is not altered by the fact that, instead of a single occurrence, it is the cumulative effect of the inhalation of dust and fumes to which a claimant is peculiarly susceptible that accelerates a claimant's pre-existing disability." 93 So.2d at 86.
In Brito v. Advance Metal Products, Inc., 244 So.2d 428 (Fla. 1971) the claimant was employed as a welder for six years, during which time he was exposed to fumes and smoke. He had a preexisting condition of polyps in the nose, and it was aggravated to the extent that he was no longer able to breathe through his nose. The Court cited Czepial v. Krohne Roofing Co., supra, wherein it is said:
"The issue here may be stated as follows: Where the constant inhalation of dusts and fumes directly contributes to the acceleration or aggravation of a pre-existing disease, has the claimant suffered an injury `by accident' for which he must be compensated by the employer in whose employment the injurious exposure occurred? We think the *566 question must be answered in the affirmative." 244 So.2d at 429.
The recent decision of Dillow v. Florida Portland Cement Plant, 258 So.2d 266 (Fla. 1972) involved a gradual injury. The claimant worked at the cement plant for about eleven years, during which time he was exposed to various degrees of dust. The evidence revealed that he smoked cigarettes for approximately forty years. He consulted a doctor about chest pains after about four years on the job, but an examination revealed nothing. Six years later, claimant was hospitalized with pneumonia and his left lung was removed. The surgeon found abscesses throughout his lung containing material resembling liquid cement. The attending pathologist testified that claimant's working conditions probably accelerated his cancer. He also stated that the aggravation could have been caused by smoking and/or dust inhalations. On the basis of this evidence, the Court allowed recovery, citing Czepial v. Krohne Roofing Co., supra.
The Supreme Court of Tennessee applied the "repeated impact" theory to allow recovery where the accident was not traceable to a definite time. In Central Motor Express, Inc. v. Burney, 377 S.W.2d 947 (Tenn. 1964), the claimant was employed as a freight loader for a period of seven years. He was fully compensated for a back injury sustained in 1961 and returned to work shortly thereafter. In 1962, he was forced to quit work as a result of severe pain in his lower back and legs. He later underwent surgery for a protruding disc. His claim for compensation was resisted by the employer who argued that the injury was not compensable because claimant could not pinpoint a particular accident on the job, and because the accident was not traceable to a definite time and place. The Court held that this argument was without merit and was foreclosed by Brown Shoe Co. v. Reed, 209 Tenn. 106, 350 S.W.2d 65 (1961), wherein compensation was awarded even though the injury could not be traced to a definite time and place. The Court went on to say:
"It is true that some jurisdictions may require a suddenness of mechanical or structural change. But in this state we have followed Professor Larson's suggestion that even where both the cause and effect are gradual rather than sudden, the repeated impact or inhalation theory may be used to show a compensable accidental injury." 377 S.W.2d at 950.
This approach was discussed by the Arizona Court of Appeals in Mead v. American Smelting & Refining Company, 399 P.2d 694 (Ariz. App. 1965). Claimant was hired in January, 1955, and a physical examination at that time revealed no problems. In March, 1956, after experiencing coughing on the job, an examination revealed that he had emphysema and asthma. He was hospitalized on several occasions for his condition and finally in 1958, his job was terminated for inability to carry on his work. The Arizona Supreme Court awarded recovery, but the Industrial Commission refused to allow compensation on several grounds, the relevant one being that the claimant did not sustain an injury by accident. The Court held as follows:
"The Arizona Supreme Court ... has determined that there was causation in this matter. We are not therefore concerned with determining the time and place of the injury, though we would be in other cases of `Gradual injury' or diseases covered by the `repeated impact' or `inhalation' theory, Central Motor Expressway v. Burney, Tenn., 377 S.W.2d 947 (1964). This court has very recently discussed the matter of work-connected emphysema as follows:
`From the reading of these cases, we find that the law in Arizona is that when a condition has developed, not instantaneously, but gradually, over a period of time, resulting in a definite *567 though unexpected injury or disease, which injury or disease is definitely work-connected, then said injury or disease is the result of an "accident" within the terms of our Workmen's Compensation Act, and is compensable.' Reilly v. Industrial Commission, 1 Ariz. App. 12, 398 P.2d 920 (1965)." 399 P.2d at 697.
The court held that the claimant's emphysema was the result of an accident and as such was compensable.
Some jurisdictions have denied recovery in gradual injury cases similar to the facts at hand. See Bess v. Coca-Cola Bottling Company of St. Louis, 469 S.W.2d 40 (Mo. App. 1971); Tegels v. Western Chevrolet Co., 139 N.W.2d 281 (S.D. 1965); and Profitt v. J.G. Watts Construction Company, 387 P.2d 703 (Mont. 1963).
However, from a careful consideration of the facts of this case and the rules applied in the previously discussed cases  particularly our own Mississippi cases  it is apparent that Jenkins' gradual injury (or aggravation thereof) occurred within a reasonably definite and not too remote period of time. Since the medical testimony and the attorney-referee's findings of fact establish that the claimant's working conditions aggravated or accelerated his condition, the claimant should be awarded the appropriate benefits in accordance with Mississippi Code Annotated Section 71-3-7 (1972).
Our holding in this case brings into focus the question of apportionment. It should be pointed out that although the medical testimony indicates that claimant's job aggravated his condition, the employer did not raise the issue of apportionment at the original hearing nor on appeal. It has been held by this Court in a number of cases that apportionment is an affirmative defense and must be pled and proven by the employer. However, this rule was altered somewhat in the case of Armstrong Tire & Rubber Company v. Payton, 186 So.2d 217 (Miss. 1966). There, the claimant died as a result of the rupture of a preexisting aortic aneurysm. The medical evidence was undisputed to the effect that the development of this condition was not caused by his employment, but was aggravated by it. The preexisting condition was asserted on the employee's claim form and was proved by her as a part of her claim. The defense of apportionment was not raised by the employer. As to the failure of the employer to plead apportionment, the Court held:
"In the view of a majority of the Court, it was not necessary under the above circumstances that the employer-carrier plead or prove as an affirmative defense that which was asserted and proved by claimant as an integral and indispensable part of her claim." 186 So.2d at 219.
The Court went on to say:
"Where there is competent evidence properly before the commission in the form of medical findings of a preexisting `physical handicap, disease or lesion,' and the proof is undisputed that this was a `material contributing factor in the results,' it is mandatory under the statute that the compensation `shall be reduced.'" 186 So.2d at 223.
It was pointed out by the Court that it was not their intention to overrule the previous cases holding that apportionment is ordinarily an affirmative defense which must be pled and proven by the employer. In distinguishing the case at bar from the earlier cases, the Court said: "In none of those cases was the causal connection of the preexisting condition asserted or proved by claimant as an intergral and indispensable part of the claim." [186 So.2d at 224] It should be noted that Payton was a 5-4 decision, the dissenting Justices feeling that the defense of apportionment *568 was waived since it was not asserted at the original hearing.
Soon after the Payton decision the issue was again raised in Mississippi Tank Company v. Dependents of Walker, 187 So.2d 590 (Miss. 1966). After the claimants were awarded full compensation, the employer raised the issue of apportionment for the first time. The Court distinguished the facts from those in Payton, pointing out that the medical evidence in the case at bar was insufficient to establish a preexisting condition which contributed to the employee's death. The Court held that since the employer failed to meet the burden of proof for apportionment or to raise it as a defense, it was deemed waived.
In the present case, the claimant was employed in the Fall of 1963. He was examined by Dr. Earl Laird in October, 1963, and was found to have asthma. Both doctors who testified at the hearing stated that the inhalation of dust, ammonia nitrate, and lime, aggravated his asthma and emphysema.
The elements necessary for apportionment are as follows:
"(1) that there must be a pre-existing physical handicap, disease or lesion, (2) this pre-existing condition must be shown by medical findings (3) to be a material contributing factor in the results following injury, ..." Cuevas v. Sutter Well Works, 150 So.2d 524 527 (Miss. 1963).
The medical evidence establishes that Jenkins was suffering from a mild asthmatic condition around the time he began working for Ogletree. It appears that the emphysema developed sometime thereafter. The testimony of Dr. Laird indicates that claimant's work combined with his condition to produce the ultimate disability, but there is no proof as to the percentage attributable to either cause.
Contrary to the situation in Armstrong Tire & Rubber Company v. Payton, supra, the claimant here did not assert a preexisting condition as an integral part of his claim. However, there was competent evidence before the Commission upon which a claim of apportionment could be based. The facts here do not present as strong a case for apportionment as Payton, but nevertheless, where there is some evidence to support it, apportionment is mandatory under the Payton rationale, regardless of whether or not it was pled.
We hold, therefore, that the appellant is entitled to compensation because of his injury arising out of and in the course of his employment which aggravated, accelerated and combined with his previous condition to cause his permanent disability to perform a gainful occupation.
We affirm the order allowing claimant's attorney an attorney's fee.
We reverse the judgment of the circuit court and the order of the Workmen's Compensation Commission and remand to the Workmen's Compensation Commission for the purpose of determining by what proportion the compensation due the claimant shall be reduced because of the preexisting physical condition of the claimant, to accord with Mississippi Code Annotated Section 71-3-7 (1972).
Affirmed in part; reversed in part and remanded to commission for apportionment to accord with this opinion.
PATTERSON, INZER, SMITH and BROOM, JJ., concur.