PER CURIAM.
We review by certiorari an order of the Florida Department of Commerce, Industrial Relations Commission, reversing by a 2-1 decision an order herein of the Judge of Industrial Claims requiring em *267 ployer, through its compensation carrier, to pay claimant temporary total compensation from March 3, 1969, during continuance of his present disability until he reaches maximum medical improvement, retaining jurisdiction to then determine the extent of his disability and the amount of claimant’s attorney’s fee, and to furnish in the interim such medical care and pay all medical bills as the nature of the disease and process of recovery may-require.
Claimant began working for employer in 1958. He worked for approximately six months in its packinghouse before moving to the tank room of the finish mill which is where the cement goes through its last manufacturing process before being bagged for shipment. He worked in that department for three years, and the JIC found:
“[Djuring those three years, prior to the installation of a dust collecting. machine in the tank room, that there was very little ventilation and that the cement dust permeated the air with a continuous fog at all times and was described by coworkers of the claimant as such that an employee working in this department could, at times, hardly see his hand in front of him. I find that this department was operated on a twenty-four hour basis and that the claimant operated in one of the eight-hour shifts during this twenty-four hours. I find that the claimant worked during this shift as one of the oilers and was required to spend approximately three hours a day of this eight-hour shift cleaning up the tank room and because of the poor ventilation and due to the dusty conditions, had to dampen a rag and put it over his face at times in order to breathe. I find that in 1963 the claimant commenced having chest pains and about that period of time the claimant was transferred from the tank room.”
Because of the chest pain claimant consulted a doctor in 1963; however, a hospital examination showed no evidence of chest disease.
From 1963 to April 1968 he worked in less dusty and better ventilated parts of the plant and his chest pains subsided. In April 1968 he was transferred back to the finish mill; although a dust collecting machine had been installed and it was not as dusty as it had been during the 1961-63 period, there was a film of dust present at all times. Claimant began experiencing chest pain again and in March 1969 he was hospitalized with lobar pneumonia. In April 1969 his left lung was removed. According to the progress notes of the attending physician, Dr. M. F. Taylor, which are included in the transcript, “at the time of surgery the patient was found to have the left upper lobe completely involved with what appeared to be small abscesses, with material resembling liquid cement.”
Testimony at the hearing on his claim showed that for- forty years, until March 1969, he smoked approximately one pack of cigarettes a day.
The JIC accepted the testimony of the attending physician and pathologist and found the disability compensable. On the employer-carrier appeal, the Commission in a 2-1 decision reversed. The majority said that the attending pathologist’s statement that “this cancer, once begun, could very probably have been irritated and caused to accelerate and to grow faster by the conditions which you have described,” (emphasis added) was not competent, substantial evidence, citing in support Harris v. Josephs of Greater Miami, Inc., Fla., 122 So.2d 561; Orange County Board of County Commissioners v. Brenemen, Fla., 233 So. 2d 377, and United States Casualty Co. v. Maryland Casualty Co., Fla., 55 So.2d 741.
We find that the Commission’s reversal is erroneous and that it lay within the province of the Judge of Industrial Claims, as trier of the facts, to find as he did.
It is noted the attending pathologist, Dr. Keller, when asked a hypothetical question based on the facts concerning the claimant’s working conditions at the cement plant, testified: “I have no opinion *268 as to the cause or the time of the beginning of this cancer. I think those things are generally unknown but it is my opinion that this cancer, once begun, could very probably have been irritated and caused to accelerate and to grow faster by the conditions which you have described.” (Emphasis added.) He further opined that the acceleration of the carcinoma was due to two things: (1) smoking, and (2) the inhalation of large amounts of dust. He further stated that “either one alone could have caused an acceleration of growth.” (Emphasis added.)
Such testimony is similar to the evidence in the recent case of Walker v. McDonnell Aircraft Corp., Fla.1970, 231 So.2d 210. In the Walker case, supra, the Supreme Court in reversing the full Commission stated:
“ . . . The order of the Judge of Industrial Claims is supported by competent substantial evidence and should not have been reversed. Dr. Norris, who operated on petitioner removing a portion of both lungs, testified that in his opinion, exposure to the gases in question ‘possibly could aggravate’ the condition. In response to a hypothetical question setting out the circumstances of petitioner’s exposure, Dr. Norris stated: T would say that I would be strongly suspicious that emphysema was a direct result of toxic exposure.’ ”
Cf. Czepial v. Krohne Roofing Co., Fla., 93 So.2d 84.
The decision of the Industrial Relations Commission is reversed with direction that the order of the Judge of Industrial Claims be reinstated.
ROBERTS, C. J., and ERVIN, CARLTON, ADKINS and BOYD, JJ., concur.