BOYD, Justice.
This cause is before us on petition for writ of certiorari and cross-petition for writ of certiorari, to the Florida Industrial Relations Commission.
The claimant, petitioner herein, is a 41 year old man who had worked in grocery stores all his life. In 1966, he moved to Florida and went to work for the Respondent, Publix Super Markets, as a meatcut-ter. Prior to this time, the claimant was in perfect health and had never had any difficulty with his hands.
The claimant’s job required him to work eight hours a day, in a refrigerated room where the temperature was 40 to 50 de *280 grees and, frequently, to go into an icebox room in which the temperature was 34 degrees. More importantly, about half of his time (or four hours a day), he had to work with his hands immersed in ice or ice cold water. He continued to work in this manner for about two years, but by January, 1968, he had developed an infection in his hands which required hospitalization.
The claimant was treated by Dr. Warren, who diagnosed the claimant’s condition as periarteritis nodosa. The doctor discharged the claimant to return to work back in 1968, but told him to avoid getting his hands cold.
The claimant returned to work for Pub-lix in 1968 and requested that his job be changed because of the doctor’s advice. He was changed to the produce department, where he no longer had to work with his hands in ice, but still had to work in the room where it was 40 to 50 degees, go into the room where it was 34 degrees, and handle cold vegetables. The claimant continued working like this until February 9, 1970, when he could no longer continue because of the condition of his hands.
The claimant’s hands have turned blue, black, and are so distorted that he cannot use them. Dr. Warren described the claimant’s hands as functionless and 100% disabled for all practical purposes. An employment counselor stated that the claimant was now unemployable.
Dr. Warren, the treating physician, was the only medical witness. He testified that the claimant’s condition, periarteritis no-dosa, is a rare vascular, collagen disease involving auto immunity. The exact cause of this disease is unknown; about all that is known about it is that it is definitely aggravated by exposure to cold. Exposure to cold causes Raynaud’s phenomena, which is a vascular reaction in which the blood vessels of the hands close because of the cold, and this cuts off the blood supply so that cells die. In persons who have periarteri-tis nodosa, such death of cells is irreversible and eventually the exposure to cold causes so much cell loss that the flesh of the hands completely dies, and the hands become useless and must eventually be amputated.
In the claimant’s case, Dr. Warren was of the opinion that the claimant’s exposure to cold in his employment did not cause the periarteritis nodosa but that this exposure to cold “most certainly” aggravated the periarteritis nodosa to cause the claimant’s loss of use of his hands, and had he not been exposed to cold the periarteritis no-dosa would have remained dormant indefinitely. Dr. Warren further stated that this aggravation of periarteritis nodosa due to exposure to cold was a particular hazard of the claimant’s employment conditions at Publix.
The Judge of Industrial Claims found that :
“. . . the aggravation of the disease periarteritis was due to causes and conditions which are characteristic of and peculiar to the Claimant’s particular occupation. The nature of the Claimant’s work was specialized and required him to become exposed to cold and ice for prolonged periods of time. These conditions encountered were, to a large degree, beyond that prevailing in employment generally.
“. . . [T]he nature of the Claimant’s work was within reasonable medical certainty the contributory cause of the aggravation.”
The trial judge concluded that the claimant had suffered permanent total disability due to a compensable, occupational disease in terms of aggravation.
The employer-carrier appealed and the Full Commission, in a 2 to 1 decision, reversed the order of the trial judge. The majority of the Full Commission concluded that the claimant had suffered neither an occupational disease nor an accident, and they therefore denied and dismissed the claim.
*281 The dissenting Commissioner wrote:
“I do not agree with the opinion of the majority that this was not a case of aggravation of a pre-existing condition. I would affirm the decision of the Judge of Industrial Claims on the ground that the condition was the result of an aggravation of a pre-existing condition.
Respondents cross-petitioned this Court for a writ of certiorari on the basis of the following facts.
The Judge of Industrial Claims entered in his Order an award of attorney’s fees to the Claimant in the amount of $16,000.00. This award was made pursuant to affidavits filed by the Claimant’s attorneys indicating that a total of fewer than 50 hours total time was expended in the preparation and prosecution of the claim. Cross-petitioners assert that the claim involved no new or unusual points of law, and a factual situation which, although novel, was not complex or without similarity in prior cases. Cross-Petitioners applied for Review of the Order of the Judge of Industrial Claims, alleging as error, among other points, the excessive award of attorney’s fees, in conflict with the rules established in Lee Engineering & Construction Co. v. Fellows[1] and Florida Silica Sand Co. v. Parker.[2] The Full Commission reviewed and reversed the Order upon other grounds, but entered no ruling on this point of appeal. Cross-Petitioners urge this Court to consider and rule upon this additional point of law, arguing that the attorney’s fee award entered by the Judge of Industrial Claims does not comport with the standards set forth in the foregoing decisions and in Tampa Aluminum Products Company v. Watts.[3]
We have heard argument of the parties and reviewed the record and briefs. The Order of the Judge of Industrial Claims is supported by competent substantial evidence and should not have been reversed. Dr. Warren, the claimant’s treating physician, testified as follows:
“A. Yes, I am familiar with his typical day and I would think that most everything outlined here would be an aggravation to his hands with this condition.
“Q. Well, Doctor, if he did this over a continuous period of time, do you feel that this would in any way hasten or aggravate the disease you have diagnosed?
“A. I think it most certainly would. I think the more he is exposed to cold or trauma, the more difficulty he will have. .
“Q. Dr. Warren, but for the exposure to the cold and ice at Publix and this continuous exposure over a period of time, is it true that this disease may not have been aggravated and could have remained dormant for an indefinite period of time.
“A. Yes, although I don’t think his employment caused his disease. I think without this he may have remained dormant. I don’t have any idea as to how long.
“Q. Dr. Warren, do you have an opinion based on reasonable medical certainty or probability as to whether or not Mr. Caropreso’s employment was a contributing cause of the aggravation?
“A. Yes, I think it was a contributing cause.
“Q. Would you consider that to be a particular hazard of employment at Publix Super Markets, assuming that the statement he has made in his typical day are correct ?
‘A. Yes.”
*282 Accordingly, the petition for writ of cer-tiorari is granted, the Order of the Full Commission is quashed, and the cause remanded with directions to reinstate the Order of the Judge of Industrial Claims. See Dillow v. Florida Portland Cement Plant,[4] Walker v. McDonnell Aircraft Corporation,[5] Czepial v. Khrone Roofing Company.[6] See also Worden v. Pratt and Whitney Aircraft,[7] and cases cited therein.
As to the contention, raised in the cross-petition for certiorari, that the attorneys’ fees awarded were excessive, this Court agrees with cross-petitioners that the instant case should be governed by the guidelines set forth in Lee Engineering and Construction Company.[8]
“In summary, where there is not a stipulation between the parties fixing a dollar value for the services rendered, there should be satisfactory proof from which the Deputy Commissioner can determine the value of the service in the light of the views expressed herein, and further, some assistance may be gleaned from Canon 12 of the Canons of Professional Ethics which provides as follows :•—
‘In fixing fees, lawyers should avoid charges which overestimate their advice and services, as well as those which undervalue them. A client’s ability to pay cannot justify a charge in excess of the value of the service, though his poverty may require a less charge, or even none at all. The reasonable requests of brother lawyers, and of their widows and orphans without ample means, should receive special and kindly consideration.
‘In determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer’s appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms, with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (S) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations in itself is controlling. They are mere guides in ascertaining the real value of the service.
‘In determining the customary charges of the Bar for similar services, it is proper for a lawyer to consider a schedule of minimum fees adopted by a Bar Association, but no lawyer should permit himself to be controlled thereby or to follow it as his sole guide in determining the amount of his fee.
‘In fixing fees it should never be forgotten that the profession is a branch of the administration of justice and not a mere money-getting trade.’ ”[9]
Accordingly, the cross-petition for writ of certiorari is granted, the order of the Full Commission is quashed, and the cause remanded with directions to reconsider and reduce the attorney’s fees awarded, in light of the foregoing guidelines.[10]
It is so ordered.
*283 CARLTON, C. J., and ROBERTS and DEKLE, JJ., concur.
ERVIN, J., agrees in part and dissents in part with opinion.

. 209 So.2d 454 (Fla.1965).

. 118 So.2d 2 (Fla.1960).

.132 So.2d 414 (Fla.1961).

. 258 So.2d 266 (Fla.1972).

. 231 So.2d 210 (Fla.1970)

. 93 So.2d 84 (Fla.1957).

. 256 So.2d 209 (Fla.1971).

. See note 1, supra.

. 209 So.2d at 458-459.

. We find that cross-petitioners’ contention that “the claim, properly presented involved no new or unusual points of law, *283 and a factual situation which, although novel, was not complex or without similarity in prior cases,” is correct in light of our disposition of petitioner’s claim, which disposition was based upon a preexisting line of highly similar cases. See notes 4-7, supra.