370 So.2d 1128 (1978)
EXXON COMPANY, U.S.A., Petitioner,
v.
Paul ALEXIS and Industrial Relations Commission, Respondents.
No. 52556.
Supreme Court of Florida.
December 7, 1978.
Barry A. Pemsler, of Jabara & Richard, Coral Gables, for petitioner.
John G. Tomlinson, Jr., of Williams, Tomlinson & duFresne, Coral Gables, for respondents.
SUNDBERG, Justice.
By petition for writ of certiorari we are asked to review an order of the Industrial Relations Commission affirming an order of the Judge of Industrial Claims which found, inter alia, that respondent/claimant sustained a forty percent loss of wage-earning capacity, despite claimant's failure to attempt to obtain employment after having reached maximum medical improvement. We have jurisdiction pursuant to Article V, Section 3(b)(3), Florida Constitution, and Section 440.27, Florida Statutes (1975). In accordance with Florida Appellate Rule 3.10 e. we have dispensed with oral argument.
The claimant, Paul Alexis, was employed by petitioner, Exxon Company, U.S.A., as *1129 an automobile mechanic. On May 8, 1974, during the course and in the scope of his employment, claimant suffered injuries when a tire rack collapsed. Petitioner accepted the accident as compensable, furnishing medical treatment and temporary total disability compensation benefits for the period from May 9, 1974, through November 13, 1974.
The claimant was initially treated by Dr. Sarnow on May 10, 1974, for a lumbo sacral sprain and aggravation and acceleration of a preexisting degenerative spondylosis and dextroscoliosis. Dr. Sarnow admitted claimant to the hospital where he remained from May 11, 1974 to May 15, 1974. Following his discharge from this initial hospitalization, claimant was reemployed by petitioner in a supervisory position. After a short period, however, petitioner terminated claimant's employment. Claimant continued under the sole care of Dr. Sarnow until July 9, 1974, approximately two months after the accident. On that date, Dr. Sarnow diagnosed a right inguinal hernia which, he opined, was causally related to the accident. Dr. Sarnow immediately referred claimant to Drs. Cantwell and Grovestein for treatment of the hernia. On August 28, 1974, Dr. Sarnow concluded that claimant had reached maximum medical improvement with regard to the lumbo sacral sprain and aggravation of the preexisting injuries, and discharged the patient from treatment. However, from October 3, 1974, to October 9, 1974, claimant was again hospitalized and surgery was performed for repair of the right inguinal hernia by the referral physician, Dr. Cantwell.
Claimant thereafter filed a claim for, inter alia: (1) temporary total benefits from May 8, 1974, the date of the accident, to the date of maximum medical improvement; (2) six weeks statutory hernia benefits pursuant to Section 440.15(6), Florida Statutes (1973); (3) a permanent partial disability of the body as a whole rating, based upon a permanent physical impairment and/or diminution in wage-earning capacity; and (4) payment of outstanding medical and hospital bills incurred for surgical repair of his right inguinal hernia. In response to this claim petitioner posited, in relevant part, that: (1) claimant had reached maximum medical improvement on August 28, 1974, and, therefore, an overpayment of temporary total disability compensation benefits, which were paid until November 13, 1974, had occurred; (2) claimant's hernia was not causally related to the accident of May 8, 1974; (3) claimant had not sustained permanent physical impairment or a loss of wage-earning capacity as a result of the accident; (4) the outstanding medical bills were not authorized pursuant to Section 440.13, Florida Statutes (1973).
Pertinent to our review are the following portions of the order of the Judge of Industrial Claims:
6. I find, based upon the testimony of Dr. Melvin Sarnow, the claimant's attending and treating physician, that as a result of his industrial injury of May 8, 1974, the claimant suffered a lumbo sacral sprain; an aggravation and acceleration of a pre-existing degenerative spondylosis and dextroscoliosis, an abnormal rotation of the lumbar spine; and a right inguinal hernia. I find that as a result of the acute low back injury, as well as the aggravation and acceleration of the pre-existing diseases of the lumbar spine, that the claimant was temporarily totally disabled from May 9, 1974, to August 28, 1974, the date I find he reached maximum medical improvement, pursuant to the testimony of Dr. Melvin Sarnow. Since the claimant was paid temporary total disability benefits through November 13, 1974, pursuant to the stipulation entered into between the parties, I find that he is not entitled to additional benefits for this class of disability.
7. I find that on October 3, 1975, the claimant underwent surgical repair of a right inguinal hernia at Miami Dade General Hospital by Dr. William H. Cantwell. I find, based upon the testimony of Dr. Melvin Sarnow, the claimant's authorized attending and treating physician, that the hernia necessitating this hospitalization and surgical repair was causally related to and a direct result of the claimant's industrial injury of May 8, 1974. Accordingly, I find that the employer is responsible *1130 for payment of the hospital and medical bills occasioned by this surgery, including the charges for the claimant's confinement at Miami Dade General Hospital from October 4, 1974 to October 9, 1974; the surgical bill of Dr. William Cantwell; and the bill of the anesthetist, Dr. Larry Morehead. In making my findings of fact in this regard I am not unmindful of the fact that the claimant's hernia was not clinically demonstrated until July 9, 1974, approximately two months after the accident. Although the statute requires the overt manifestations of a hernia to appear suddenly, I find, based upon the explanation and testimony of Dr. Sarnow, that the presence of the claimant's hernia was masked by the severity of his low back pain and it was not until this condition started to improve, following two months of intensive therapy and treatment, that the claimant was able for the first time to focus his attention to a localized area of pain in his right inguinal region. It was at this point that clinical examination revealed the presence of the hernia and Dr. Sarnow referred him to Drs. Grovestein and Cantwell for the necessary surgical repair. Accordingly, I find that the claimant suffered a compensable hernia on May 8, 1974, and is entitled to payment of hospital and medical bills incurred for treatment of the hernia plus six weeks specific compensation benefits. I find, however, that since the employer paid temporary total disability benefits past the date of maximum medical improvement that they are entitled to a credit for this overpayment against statutory hernia benefits due and owing the claimant.
8. I find, based upon the testimony of Dr. Melvin Sarnow, that as a result of the acute lumbo sacral sprain and aggravation and acceleration of the pre-existing degenerative spondylosis and dextroscoliosis suffered by the claimant in his industrial accident, that he reached maximum medical improvement on August 28, 1974, suffering a 10% permanent physical impairment of the body as a whole. I find that as a result of this physical impairment the claimant will be limited in the future from engaging in activities requiring excessive bending or stooping, or lifting in excess of fifteen to twenty pounds. Based upon the nature of his injury, and the attendant physical limitations placed upon his activities as a result thereof, as well as my consideration of his age of 63 years; lack of formal education; prior work history, which has been singularly limited to employment as an automobile mechanic, as well as my consideration and evaluation to a lesser degree of the other factors to be taken into consideration when determining wage earning capacity loss, I find that the claimant will be limited in the future to work activities which are light and/or sedentary in nature, and suitable and compatible with his physical limitations and restrictions, and that as a result thereof has suffered a 40% diminution in wage earning capacity.
* * * * * *
10. Subsequent to the initial final hearing held before me on July 8, 1975, the claimant filed a Motion for Substitution of counsel, which came on to be heard by me on August 12, 1975. During the course of the motion proceedings, there being no official court reporter present, claimant's new counsel, Mr. William duFresne, orally moved the court to allow the claimant to present further testimony at a subsequent hearing, notwithstanding the fact that at the conclusion of the initial hearing held on July 8, 1975, both parties announced they were prepared to rest their case, subject to the taking of post hearing depositions. After hearing extensive argument I granted the oral motion, primarily because the claimant was not presently able to work; had not been able to work since his industrial accident; and presented no evidence or testimony at the final hearing bearing on the question of wage earning capacity, one of the primary issues to be ultimately determined by me, as evidenced by the claimant's age of 63, and physical inability at that time to return to work.
* * * * * *

*1131 I find that pursuant to the statutory powers vested in a Judge of Industrial Claims that I have not only the right but when warranted, the duty to take additional testimony, obtain examining physicians and conduct whatever proceedings are necessary to properly serve the ends of justice, at any time prior to the entry of a Final Order on the merits, absent the application or operation of any time limiting provision of the statute, such as Rules 8 and 30. Since neither rule was raised nor applicable to the employer's objection to my hearing further testimony, the employer's motion was denied as I find that by virtue of my statutory powers and duties that in the interests of justice and in fairness to all parties, the claimant should have an opportunity to fully present his position, there being no prejudice to the employer as they were granted the opportunity at such future hearing to present any witnesses or evidence that they wished in rebuttal of any testimony presented or offered by the claimant.
On review by the Industrial Relations Commission, the following relevant points were raised by petitioner:
1) Whether there was competent substantial evidence to support the finding of the Judge of Industrial Claims that claimant suffered a compensable hernia.
2) Whether the Judge of Industrial Claims erred in allowing the claimant to reopen his case and take additional testimony on the issue of loss of wage earning capacity after all parties had rested.
3) Whether there was competent, substantial evidence to support the finding of the Judge of Industrial Claims that claimant suffered a 40% loss of wage earning capacity due to the lumbo sacral sprain and aggravation of the pre-existing injuries, when claimant made no effort to test his employability in the open labor market after having reached maximum medical improvement.
The Industrial Relations Commission dispensed with oral argument on review and, finding no reversible error to have been demonstrated, affirmed the order of the Judge of Industrial Claims.
With respect to point (1), it is apparent that there is competent, substantial evidence in the record, which comports with logic and reason, to support the finding of the Judge of Industrial Claims. See Brown v. S.S. Kresge Company, Inc., 305 So.2d 191 (Fla. 1974); Dillow v. Florida Portland Cement Plant, 258 So.2d 266 (Fla. 1972); United States Casualty Co. v. Maryland Casualty Co., 55 So.2d 741 (Fla. 1951). Further, we find that the Judge of Industrial Claims did not depart from the essential requirements of law in permitting claimant to reopen his case and present additional testimony after he and petitioner had rested their respective cases. It is well established that the decision of a trial judge to allow a party to reopen his case will not be reversed unless the opposing party was prejudiced thereby. Considerable latitude and discretion is afforded the trial judge in these matters. See Eli Witt Cigar & Tobacco Co. v. Matatics, 55 So.2d 549 (Fla. 1951); Akins v. Taylor, 314 So.2d 13 (Fla. 1st DCA 1975); King v. State, 272 So.2d 821 (Fla. 3d DCA 1973). Similar discretion reposes with the Judge of Industrial Claims. In the case before us, we are not persuaded that the Industrial Relations Commission erred in failing to find that petitioner was prejudiced by the reopening of claimant's case. This is so because petitioner was permitted to present evidence in rebuttal of any additional testimony presented by claimant. Accordingly, we find petitioner's second point to be without merit.
As to petitioner's third point, however, we conclude that the record is devoid of competent, substantial evidence to support the determination of the Judge of Industrial Claims that claimant suffered a forty percent loss of wage-earning capacity as result of the lumbo sacral sprain and aggravation of his preexisting injuries. This is so because claimant failed to establish that he sought employment after August 28, 1974, the date when he reached maximum medical improvement with respect to these injuries. The only evidence contained in the record reflects that claimant was reemployed by petitioner shortly after his first hospitalization of May 11, *1132 1974 through May 15, 1974. However, claimant was terminated shortly thereafter and made no further efforts to seek employment. It is well established that in order to justify an award of compensation based upon a diminution of wage-earning capacity, a claimant must show that he has made an effort to test his employability in the open labor market after having reached maximum medical improvement. See Clark v. Western Knapp Engineering Company, 190 So.2d 334 (Fla. 1966); Montgomery Ward and Company, Inc. v. Hayes, 172 So.2d 581 (Fla. 1965); Trieste v. Anchell, 143 So.2d 673 (Fla. 1962). Because claimant in the case before us failed to make such a showing, the Judge of Industrial Claims improperly concluded that he suffered a forty percent loss of wage-earning capacity.
Based upon our finding of error with respect to petitioner's third point on review, the petition for writ of certiorari is granted and that part of the order of the Industrial Relations Commission affirming the finding that claimant suffered a forty percent diminution of wage-earning capacity is quashed. The cause is remanded to the Industrial Relations Commission with directions to vacate the relevant portion of the order of the Judge of Industrial Claims and to remand the cause to that Judge for proceedings not inconsistent with this decision. The remainder of the order of the Industrial Relations Commission is hereby approved.
It is so ordered.
ENGLAND, C.J., and OVERTON and ALDERMAN, JJ., concur.
ADKINS, BOYD and HATCHETT, JJ., dissent.