404 So.2d 381 (1981)
UNIVERSITY OF WEST FLORIDA and Division of Risk Management of the State of Florida, Appellants,
v.
Ollie E. NALL, Appellee.
No. ZZ-173.
District Court of Appeal of Florida, First District.
September 29, 1981.
Rehearing Denied October 28, 1981.
*382 J. Nixon Daniel, III, of Beggs & Lane, Pensacola, for appellants.
Roderic G. Magie of Levin, Warfield, Middlebrooks, Mabie & Magie, P.A., Pensacola, for appellee.
PER CURIAM.
The employer/carrier contend on this appeal that the deputy commissioner's award of 60% permanent partial disability based on loss of wage earning capacity was in error in that the claimant made no work search, and they further contend that the deputy commissioner's disallowance of credit for temporary total disability payments was erroneous. We agree that the failure to establish a work search precludes the disability award based upon loss of wage earning capacity, and we further find that based upon recent decisions of this court not available to the deputy commissioner at the time of his order the case should be remanded for further consideration of whether the employer/carrier are entitled to the credits sought.
Claimant, a 35-year old laborer with an eighth grade education, was injured in a July 11, 1977 accident while operating a riding lawn mower. His injuries subsequently required surgery to his cervical spine and upon recovery his physician, Dr. Eyster, an orthopedic surgeon, found a 15% permanent partial impairment to the whole body, and restricted him to lifting weights in excess of ten pounds, repetitively, working with his arms overhead, or working in a position where it was necessary to extend his head and look up repeatedly. Claimant has worked intermittently with the University since the accident, continuing in his same employment, although his work is of a lighter nature than prior to the accident. He is unable to use the riding lawn mower, *383 hedge clippers, shovel, or to do any strenuous work. His present employment consists primarily of driving a light truck doing mostly errands, and other work which he described as in the nature of supervisory work.
In his order the deputy commissioner, after reviewing the claimant's education, work history, and the evaluation made by the employer's vocational expert, considered in the light of his injuries and present physical condition found: "Considering these factors, his ability to compete in the open labor market has been severely reduced by his industrial injury and if required to look for work outside his present employment, he would experience much difficulty." He further found that as a practical matter, the claimant would be "limited to such work as a self-service filling station attendant and a parking lot attendant." He then made a comparison between the minimum wage applicable to such employment, as compared with claimant's earnings at the time of the injury, and concluded that claimant had sustained a wage earning capacity loss.
We fully agree with the deputy's finding that the claimant has limited employment capabilities. However, the rule is very clear that in order to be entitled to permanent disability in excess of his physical impairment, the claimant must not only establish that his loss of wage earning capacity exceeds his anatomical disability, but must test such wage earning capacity in the open labor market by a good faith work search, after MMI has been reached. Exxon Company v. Alexis, 370 So.2d 1128 (Fla. 1978); Pasco County v. Green, 382 So.2d 798 (Fla. 1st DCA 1980); and Suave Shoe Corporation v. Suarez, 396 So.2d 777 (Fla. 1st DCA 1981). Here there was no work search, and we fail to find in the record any evidence that claimant is unable to seek other employment, or that he is unable to work at other employment which is no more physically demanding than his present job with the University, but which would be equally remunerative. There is no record evidence concerning what specific jobs he can or cannot do (except as indicated above), and claimant's own testimony discloses that he has made no effort to find other employment, and indeed, was unaware that seeking other employment was an alternative available to him.
We have examined National Airlines Inc. v. Highsmith, IRC Order 2-2623 (1974), and Aero Corporation v. Smith, IRC Order 2-2684 (1974), in connection with appellee's contention that the wage earning capacity award was justified by virtue of the fact that claimant's present employment with the University is "sheltered employment." Even if we agreed that claimant's present job fits within the definition of "sheltered employment" as defined in the cases, we find nothing in these decisions or other authorities which would indicate that one employed in "sheltered employment" is necessarily excused from a job search as a predicate to proof of entitlement to wage earning capacity loss. In National Airlines the Industrial Commission reversed a permanent total disability award based upon loss of wage earning capacity, finding that the evidence fell short of proving "sheltered employment," so that the claimant was entitled only to permanent partial disability due to loss of wage earning capacity. Similarly, in Aero Corporation, an award of permanent total disability based on wage earning capacity loss was reversed, the Industrial Commission pointing out that the claimant had not carried his burden of establishing his "inability to acquire even light work in the open labor market ...," citing South Atlantic Ship Builders, Inc. v. Taylor, 234 So.2d 97, at 98 (Fla. 1970), and quoting the following:
The employer-carrier has the burden of showing that suitable employment is available for a claimant only after the claimant has proven by competent, substantial evidence that he is not able to acquire and uninterruptedly perform even light work in the open labor market. Port Everglades Terminal Co. v. Canty, 120 So.2d 596 (Fla. 1960).
While these cases recognize that a claimant may be found totally disabled or partially *384 disabled even though working in sheltered employment, neither advances the proposition that a job search is unnecessary.
As for the second issue, the deputy commissioner's disallowance of credit for temporary total compensation paid by the E/C after MMI, we note that this order was made prior to this court's decision in Belam Florida Corporation v. Dardy, 397 So.2d 756 (Fla. 1st DCA 1981), which adopted a view departing substantially from established case law on this subject. In Belam, the court rejected the notion, derived from earlier decisions, that under no circumstance can overpayment of compensation in one class be applied as credit against compensation found to be due in another class. Instead, the court adopted a "more moderate approach," ruling that it will be presumed that any overpayment of compensation is a gratuity "in the absence of a finding that a reasonable basis exists for the overpayment." Id. at 758. Accordingly, we remand on this point for further consideration by the deputy commissioner as to whether in this case there was any reasonable basis for the overpayment that would overcome the presumption that such payments were a gratuity.
REVERSED and REMANDED.
MILLS, ERVIN and LARRY G. SMITH, JJ., concur.